THE PEOPLE OF THE STATE OF NEW YORK ex rel. MOLLIE PORTNOY, Respondent, against ANN STRASSER, Appellant.

Argued January 24, 1952; decided March 13, 1952.

*Henry Epstein, Bennett D. Brown, Mildred Roth* and *Hope R. Stevens* for appellant. I. The right of a child to the care and society of her mother, and the right of a mother to the custody of her own child, are paramount rights which must be upheld in the absence of convincing evidence that the mother is unfit to exercise such custody. (*Matter of Thorne,* 240 N. Y. 444; *Matter of Thoemmes,* 238 App. Div. 541; *People ex rel. Grament* v. *Free Synagogue Child Adoption Comm.,* 194 Misc. 332; *People ex rel. Hydock* v. *Greenberg,* 273 App. Div. 710; *People ex rel. Armour* v. *Armour,* 147 Misc. 313; *Matter of Livingston,* 151 App. Div. 1; *People ex rel. Boulware* v. *Martens,* 232 App. Div. 258, 258 N. Y. 534; *Matter of Bock,* 255 App. Div. 862; *Matter of Stuart,* 255 App. Div. 811; *People ex rel. Hausler* v. *Stegmeier,* 240 App. Div. 901, 264 N. Y. 483.) II. The court below violated the natural, legal and constitutional rights of appellant and abused its discretion in taking custody of the child from appellant. (*Pierce* v. *Society of Sisters,* 268 U. S. 510; *Meyer* v. *Nebraska,* 262 U. S. 390; *People ex rel. Sisson* v. *Sisson,* 271 N. Y. 285; *Stromberg* v. *California,* 283 U. S. 359; *Matter of Kananack,* 272 App. Div. 783; *Matter of Lewis* v. *Spaulding,* 193 Misc. 66; *Matter of Vardinakis,* 160 Misc. 13; *Shelley* v. *Kraemer,* 334 U. S. 1.)

*Osmond K. Fraenkel* for New York City Committee of the American Civil Liberties Union, *amicus curiæ,* in support of appellant's position. Irrelevant to any proper proceeding for the custody of a child is the question of religion. It is well settled that the State has no power to interfere with a parent's religious upbringing of a child. (*Pierce* v. *Society of Sisters,* 268 U. S. 510; *Board of Education* v. *Barnette,* 319 U. S. 624; *Lewis* v. *Board of Educ. of City of N. Y.,* 157 Misc. 520.)

*George H. Cohen* for New York City Chapter of the National Lawyers Guild, *amicus curiæ,* in support of appellant's position.

*Moses Kaplan* for respondent. I. The Appellate Division and the trier of the facts, with ample evidence in the record, properly exercised their discretion in awarding custody to relator. (*People ex rel. Destasio* v. *Perruzza,* 277 App. Div. 996; *Braunworth* v. *Braunworth,* 285 N. Y. 151.) II. The record shows appellant's utter neglect of the child.

DESMOND, J. The order appealed from directs that Robin Strasser, born May 7, 1945, be taken from the custody of defendant, her mother, and delivered to the custody of relator, the child's maternal grandmother, the mother being allowed by the order to have the child, during daytime hours, on Saturday and Sunday of each week. The petition for habeas corpus, which commenced this proceeding, alleged that it was against the best interests of the infant to permit her to live with her mother since, according to the petition, the mother is unable properly to maintain and rear the child, that the mother is a communist, without any regard for religious upbringing of the child, and that she is married to a second husband who is of a race and religion different from that of the child. The Official Referee decided against the mother, as we read his decision and order, solely because, as he found, the mother had neglected the child's care and training because of other activities in which the mother participated, and that this neglect included the placing of the child in a day nursery from nine o'clock in the morning until five o'clock in the afternoon. The Referee, for those reasons, apparently, determined that the mother is "not a fit or proper person to have the custody of said infant." Concluding that the grandmother is a fit, competent and proper person who wants

the child solely for motives of affection and to give the child the right kind of care and religious and other education, the Referee ordered that this little girl, now six and a half years old, be taken from her mother's home and removed to that of her grandmother.

Questions of custody are, generally, for the Supreme Court, in its discretion, and it is rarely that any such determination by it can raise any question of law for us. But that discretion is not an absolute or uncontrolled one (see *Bunim* v. *Bunim,* 298 N. Y. 391). No court can, for any but the gravest reasons, transfer a child from its natural parent to any other person (*People ex rel. Boulware* v. *Martens,* 232 App. Div. 258, affd. 258 N. Y. 534; *People ex rel. Hausler* v. *Stegmeier,* 240 App. Div. 901, affd. 264 N. Y. 483; *Matter of Thorne,* 240 N. Y. 444; Domestic Relations Law, § 81), since the right of a parent, under natural law, to establish a home and bring up children is a fundamental one and beyond the reach of any court (*Meyer* v. *Nebraska,* 262 U. S. 390, 399).

We do not have here one of those unhappily frequent cases where the contest is between parents and the courts must make the best available choice. Nor is this a case where a parent has left a child with relatives for a long time, then seeks it back (see *Matter of Benning* [*Nigro*], 303 N. Y. 775). Here a grandparent has assumed the very heavy burden of proving that a little girl should, by court order, be separated from her own and her mother's home. To sustain that burden, relator must do more than prevail on a simple factual issue as to which are the better surroundings, or as to which party is better equipped to raise the child. Quoting a famous case: '' The dilemma, it would seem, is this: Shall she be ignored as an outcast or recognized as a mother? If she is not to be ignored, if the child is still her child, her rights must be regarded. Her right as a parent, not as a married woman, to the care and custody of the child becomes superior to that of all others unless it should be shown anew by the child's relatives or custodians that she is an unfit person to exercise such guardianship '' (*Matter of Thorne, supra,* pp. 449–450; see *Matter of Livingston,* 151 App. Div. 1, 7, and *People ex rel. Beaudoin* v. *Beaudoin,* 126 App. Div. 505, affd. 193 N. Y. 611). It is signifi-

cant that the several counsel who have filed briefs on this appeal have found no reported New York case where, for any reason, a small child has been ordered delivered from the custody of a decent parent in a decent home into the hands of others.

With those fundamentals before us, we look at the testimony on which was grounded the finding of this mother's neglect. Born in May, 1945, Robin Strasser lived in the home of her parents until they separated about a year later. Mother and child then went to live with relator and the latter's husband and grown-up son, in their small New York City apartment. Sometime in 1947 defendant took up her residence in another apartment and the infant continued to live with her grandparents. Later (November, 1947) defendant obtained a divorce in this State from her husband, the decree awarding her sole custody of the child, also an award of support money which, except for a few installments, has not been paid by the father. (The father was not a party or a witness here, but the record contains a letter from him dated January 10, 1950, in which he says he will not consent to the child living with anyone other than defendant.) The child lived, thereafter, in the grandparents' apartment until sometime in 1948. Then, for a few months, the child resided with both her mother and grandmother, being cared for in a day nursery five days a week, and staying with her grandparents over the week ends. Late in 1948, defendant took Robin to live with her, and with her the child has ever since remained (the operation of the order below has been stayed).

In 1949, defendant, a Caucasian of Jewish parentage, married her present husband, a Negro. Defendant is now about twenty-six years old, and her husband, about thirty-two years of age, is said to be a man of fine character, steadily employed at a good salary. Defendant has had no other children. The grandmother described defendant's present apartment as dirty and ill-furnished, but several witnesses (and a number of photographs) disputed this, and the Referee does not seem to have based his findings on any such alleged fact. If this were a case where a comparison of the physical aspects of the two homes would be appropriate, it might be said that defendant's home is not inferior to that of relator. But no such disparity would

be material, unless conditions were such as to make living there harmful to the child, and the family physician testified that this little girl is well adjusted and well cared for in a healthful, sufficient home.

After her marriage, defendant continued to hold an outside job and to take the girl daily to a nursery school, but in an affidavit submitted to, and considered by, the Referee on a motion for reargument before the entry of the order here appealed from, defendant told the court that she had given up her employment, was caring for the child daily at home and intended to continue so to do, all of which is undisputed.

The finding, then, that this mother so neglected her little girl as to justify a change in custody, must have been based on one or more of these considerations: first, that communistic activities occupied the mother's attention; second, that the mother went out to work and left the infant in a day nursery and nursery schools, and, third, that the child was not being trained in the religion in which it was born. The testimony (vehemently denied by defendant) as to membership and work in alleged communistic " Front " organizations was as of a period long before the trial and there was nothing to show that such associations continued, or that they were such as to make the mother unfit to rear her own infant. Outside employment and the use of nursery schools by a mother are not things that courts should try to control, and it appears that both have come to an end, anyhow. As to the mother's failure to train the little girl in the faith of her fathers, that, too, is within the parent's sole control (*Meyer* v. *Nebraska, supra*; *Pierce* v. *Society of Sisters,* 268 U. S. 510; *Matter of Zorach* v. *Clauson,* 303 N. Y. 161). We conclude that there is here no such proof of neglect as would authorize any court to take an infant from its mother, or interfere in the internal arrangements of family life (see *People ex rel. Sisson* v. *Sisson,* 271 N. Y. 285).

The order should be reversed, without costs, and the writ dismissed.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and FROESSEL, JJ., concur.

Order reversed, etc.