Owen McGivern, J.
In this habeas corpus proceeding, return of an infant daughter is sought by a mother, who is a schoolteacher, from the father of the child and his parents. The parties were married on January 23, 1954; on September 15, 1956 they parted, but even before they separated their married life was marred by much bickering and apparently no little “in-law” interference on the part of the husband’s parents, both of whom happen to be lawyers, and with whom he resides. Into this family group malice has made a deep incision, and during the course of protracted custody hearings both sides have flung their vials of wrath.
*699 The main charge levelled against the mother-petitioner is an accusation of misconduct on November 22, 1956. This was the subject of a plenary trial in this court, and the complaint was dismissed on May 2, 1957 by Mr. Justice Arthur Markewich. There are other charges of neglect and failure to provide a wholesome environment for the child, and representations are made that the infant can be better provided for in the home of her paternal grandparents, who emerge as the real protagonists in the struggle. In their hands the son is but the merest utensil. So much so, that the ultimate question for the court to decide is whether to leave the child with the grandparents, or restore her to her mother.
Since the law has an almost reverential regard for mother love as an ingredient in the sound upbringing of a child, this court has no alternative but to uphold the writ and order the child restored to her mother.
It is noteworthy that the petitioner was permitted to keep her child for a period before and after her apprehension in alleged misconduct, and even after suit for divorce was instituted against her. It was only after a series of altercations with her husband and his omnipresent parents that the husband arrogated custody to himself, without benefit of court sanction.
No doubt the grandparents can surround the infant with many material advantages which this mother-petitioner cannot afford. But this is not the test (People ex rel. Kropp v. Shepsky, 305 N. Y. 465). In the law, an infant cannot be transferred from a natural parent to another except for the gravest disqualifications (People ex rel. Portnoy v. Strasser, 303 N. Y. 539). In the opinion of this court an unproven charge that a mother has lapsed from grace is not sufficient to wrest control of a child from her. In this case there is no proof of promiscuity or turpitude, and since the petitioner is a schoolteacher it is to be expected she will hereafter conduct herself in a more than ordinarily circumspect manner, avoiding even the appearance of offense.
In allowing her to retain her child, however, the court is not recommending her for any “ Model Mother ” awards. Her past conduct has not been exemplary, and in certain instances she has not measured up to her duties as a mother. The court extenuates these past lapses on the grounds of great emotional pressures, and merely declares that the evidence adduced during the hearings was not sufficiently grievous to separate her from her own infant, to the lasting detriment of both of them. Accordingly, the writ is sustained, and custody is recognized as being in the petitioner. The father may have rights of visita *700 tion from Friday evening to Monday morning, and may, during this interim, transfer the child to the home of the paternal grandparents. The court will accept suggestions as to the exact time of transfer, and also as to what amount of support the husband should pay. Settle order.