Harry Gr. Herman, g.
In this pending adoption proceeding, the 23-year-old unwed mother of an infant son seeks to revoke a consent to adoption given in a Brooklyn hospital four days after his birth on August 12, 1961, and requests that custody of the infant be restored to her. The adoption proceeding was instituted in this court on October 3, 1961.
Physical custody of the child was delivered to the foster parents by an attorney named in the petitioner’s consent (in the form of an affidavit) executed at her home in Queens wherein it is stated that this attorney had ‘ ‘ a couple who would be willing to adopt a child.” The consent was not acknowledged as required by subdivision 3 (formerly subd. 5) of section 112 of the Domestic Relations Law. The petition and agreement of adoption were executed by the foster parents on August 16,1961 the very date upon which the consent was executed by the natural mother.
The hearing established that the petitioner arrived in New York from a midwestern gtate in 1958 and became acquainted with a man with whom she was employed who promised to marry her and gave her an engagement ring. Late in 1960 petitioner learned that she was pregnant and upon informing her fiancé of her condition, her fiancé stated that he was already married and terminated the relationship.
The few friends she had drifted away and her parents rejected her. Distraught, confused and rejected by both family and *684 friends, she executed the aforesaid consent prepared by the attorney who had been referred to her by her physician.
Within a few weeks thereafter and at the end of September, impelled by an overwhelming desire to regain custody of her-child, the petitioner visited the District Attorney of Queens County seeking assistance and was advised to consult an attorney to initiate appropriate legal proceedings. She retained counsel but he was unsuccessful in trying to locate the child through the attorney who had prepared the consent of August 16,1961. A habeas corpus proceeding was then brought against said attorney in the Supreme Court of Queens County returnable on October 25,1961. He advised that court of this pending adoption proceeding. This was the first the petitioner knew of her son’s whereabouts. The habeas corpus proceeding was discontinued and the instant application was made by an order to show cause dated November 17, 1961.
Such of these facts as do not appear in the petition were established at the hearing where the petitioner appeared and testified in detail. The court finds that petitioner’s desire to regain custody of her child is sincere. Her efforts to revoke the consent were swift and decisive. The foster parents adduced no proof whatever at the hearing, and took the position that the infant would be better off with them and, in a memorandum submitted by their counsel, argued that there was an abandonment.
All of the circumstances surrounding the execution of the consent of August 16, 1961, the inherent emotional aspects and the petitioner’s prompt, decisive and vigorous action in trying to locate her infant and instituting this proceeding negate any theory of abandonment, and the court finds that there was no abandonment.
Under a set of facts strikingly similar to those in this proceeding, Judge Ftjld stated unequivoeably the law of this State applicable to this situation:
‘ ‘ Apart, however, from such special and weighty circumstances, the primacy of parental rights may not be ignored. In no case may a contest between parent and nonparent resolve itself into ‘ a simple factual issue as to which [affords] the better surroundings, or as to which party is better equipped to raise the child. ’ (People ex rel. Portnoy v. Strasser, supra, 303 N. Y. 539, 542.) And that is true even if the nonparent initially acquired custody of the child with the parent’s consent. (See, e.g., People ex rel. Beaudoin v. Beaudoin, supra, 126 App. Div. 505, 507, affd. 193 N. Y. 611; cf. Matter of Bistany, 239 N. Y. 19.)
*685 Except where a nonparent has obtained legal and permanent custody of a child by adoption, guardianship or otherwise, he who would take or withhold a child from mother or father must sustain the burden of establishing that the parent is unfit and that the child’s welfare compels awarding its custody to the nonparent. (See, e.g., People ex rel. Portnoy v. Strasser, supra, 303 N. Y. 539, 542; Matter of Gustow., supra, 220 N. Y. 373.) Where consent initially given to a child’s adoption, often under the pressure of circumstances, is thereafter withdrawn (see, e.g., Domestic Relations Law, § 112, subd. 7), the case falls within the rule and not within the exception. In other words, the burden rests, not, for instance, upon the mother to show that the child’s welfare would be advanced by being returned to her, but rather upon the nonparents to prove that the mother is unfit to have her child and that the latter’s well-being requires its separation from its mother.” (People ex rel. Kropp v. Shepsky, 305 N. Y. 465, 469.)
More recently in People ex rel. Anonymous v. Anonymous (10 N Y 2d 332) Judge Ftjld again reviewed the problem confronting the courts in these contests between the natural parent and foster parents. There the mother had given up her child three years before she instituted proceedings to regain custody and had been promiscuous since she was 13 years old. The court stated as follows (pp. 335-336): “ Little purpose is to be served by treating at length the sordid and unhappy story unfolded by the record before us. It is enough to say, with respect to the relator’s abandonment of her child, that, from the time she gave him up in February, 1957, when he was but a few days old, until .she commenced the present proceeding in February of 1960, the relator not only took no formal steps to gain the baby’s custody, but made not the slightest inquiry as to his whereabouts or health. This total lack of concern and interest on her part takes on added significance in view of the fact that, having married a few months after the baby was born, she could have given him a home. We conclude, therefore, that the trial court correctly decided that the foster parents sustained their burden of establishing that the relator’s conduct reflected ‘ a settled purpose to be rid of all parental obligations and to forego all parental rights ’. (Matter of Maxwell, 4 N Y 2d 429, 433; see, also, People ex rel. Kropp v. Shepsky, 305 N. Y. 465, 469, supra; Matter of Benning [Nigro], 303 N. Y. 775.) No matter how strongly one may favor the primacy of parental rights, the conclusion is well-nigh unavoidable — to cull from a sentence in the Maxwell case (4 N Y 2d, at p. 433) —that the relator’s ‘ callous disregard ’ for the child and her 1 complete indifference ’ to *686 where he was or how he was faring reflected a repudiation of motherhood and an abandonment of maternal rights and responsibilities.” Obviously, the facts which warranted the finding of abandonment and unfitness in People ex rel. Anonymous v. Anonymous (supra) are absent in the instant proceeding.
The petitioner here is fully aware of the restrictions that will be imposed upon her by the return of the child. The one true friend who stood by her, a neighbor whom she met while struggling to regain custody, testified that she would look after the infant while the mother was at work. While not possessed of great funds, petitioner has sufficient resources, a position which provides an adequate salary and ample quarters to maintain the child (see Matter of Anonymous, 13 A D 2d 885).
In addition, this court, after the close of the hearing, received a letter signed by the mother’s parents, and acknowledged before a notary public. It appears that petitioner’s parents have reconsidered their prior rejection since they have expressed the wish that petitioner and her son return and stay with them, and their willingness to help support both mother and child. A confidential report by the Westchester County Department of Public Welfare, Division of Family and Child Welfare, was furnished to the court under section 116 of the Domestic Relations Law. This report discloses a serious question as to whether the moral and temporal welfare of the child would be promoted by the adoption. This has served only to confirm the court’s conviction as to the determination to be made.
Under these circumstances the application to revoke the consent to adoption dated August 16, 1961 is granted and the pending application by the foster parents for the adoption of the infant is denied.
There remains the question of custody of the infant. Heretofore, under facts such as here exist, the Surrogate’s Courts had jurisdiction as to the revocation of the consent to adoption, but not as to a transfer of custody, and the parties were relegated to the Supreme Court for the institution of habeas corpus proceedings (see People ex rel. Kropp v. Shepsky, 305 N. Y. 465, 467, supra). However, the recent amendment to section 116 of the Domestic Relations Law by chapter 147 of the Laws of 1961, effective September 1, 1961, has enlarged the jurisdiction of the Surrogate’s Court in so-called private-placement adoptions. The amendment confers power upon the Surrogate to “ remove the child from the home of the petitioners [the foster parents] and return the child to a natural parent or place the child with an appropriate authorized agency By its express terms the amendment applies to all adoption proceedings commenced on *687 or after September 1,1961, and the law in force prior thereto is made applicable to a petition received by the court on or before August 31,1961 (L. 1961, ch. 147, § 2). The petitioner’s prayer for relief as to the return of custody of her child is, therefore, granted.
Submit order on notice directing that the consent of August 16,1961 be revoked and that custody of the child be given to the natural mother. The order shall contain a directive to the foster parents that the infant be returned to the natural mother at a time and place agreed upon by all parties, or in default of such agreement, as provided by the court, by order to be made at the foot of this order.