Raymond E. Aldrich, Jr.,
Acting Judge of the Family Court. A habeas corpus proceeding was brought in the Supreme Court by John O. Moffett against Charles C. Cooper for the sole and *1006 complete custody of two children, John David Moffett and Robin Lee Moffett, twins, born April 19, 1954. The return to the writ made certain admissions and denials, and affirmatively invoked the equitable jurisdiction of the Supreme Court in determining the issue of custody. Thereafter the children by their own affidavit requested that the relief sought by the writ be denied and that their affidavit be considered by such court as their petition in equity for a determination as to their present and future custody. Upon the return of the writ, the Supreme Court referred the proceedings, with approval of all parties, to the Family Court, Dutchess County, for further disposition.
The constitutional and legislative grants of jurisdiction to Family Court for resolution of the custody proceedings now under consideration are found in sections 13 and 19 of article VI of the New York State Constitution and in section 651 of -ihe Family Court Act.
Upon the adoption of subdivision b of section 13 of article VI, the Family Court was conferred with jurisdiction over certain enumerated classes of proceedings to be originated in such Family Court in the manner provided by law, more particularly: “ (2) the custody of minors except for custody incidental to actions and proceedings for marital separation, divorce, annulment of marriage and dissolution of marriage or except for custody in habeas corpus proceedings ’ ’, and by subdivision c of the same article with jurisdiction ‘ ‘ to determine, with the same powers possessed by the supreme court, the following matters when referred to the family court from the supreme court: habeas corpus proceedings for the determination of the custody of minors ”.
This court holds that the foregoing quoted provisions of subdivision b conferred upon Family Court as a court of original jurisdiction all proceedings for custody of minors, except those specifically exempted by enumeration in clause (2) of subdivision b, provided the same were commenced “ in the manner provided by law While the application in equity for the determination of custody in the proceeding to be now decided was made by the two children involved herein in the Supreme Court action, the same application might have been made to the Family Court in the first instance (Matter of Chin v. Wyman, 41 Misc 2d 641), with the method of procedure being in the manner provided by law in accordance with the CPLR (Family Ct. Act, § 165).
Article VI (§ 19, subd. a) is constitutional authority for the Supreme Court to transfer to Family Court for disposition this proceeding brought by the children by their petition in equity *1007 and the relief sought by respondent in his return to invoke the equity jurisdiction of the Supreme Court, since Family Court has original “jurisdiction of the subject matter” of proceedings for the determination of custody of minors, and this jurisdiction is concurrent with, and not within the “ exclusive jurisdiction ’ ’ of the Supreme Court.
The constitutional power of Supreme Court to refer to Family Court the habeas corpus proceeding now to be decided clearly appears from a reading of the wording of the Constitution and needs no further elucidation (N. Y. Const., art. VI, § 13, subd. c).
The amendment effective September 1, 1966 of section 651 of the Family Court Act to provide for the transfer from Supreme Court to Family Court of ‘ ‘ habeas corpus proceedings and proceedings brought by petition * * * for the determination of the custody of minors ” can only be interpreted as a legislative recognition of the provisions of article VT (§ 13, subd. c, and § 19, subd. a) providing for referral and transfer of custody proceedings. The omission by the Legislature to amend at the same time subdivision (b) of section 115 of the Family Court Act to include proceedings involving custody of minors brought by petition can only be interpreted as as an oversight.
Since Family Court has jurisdiction of the subject matter of proceedings involving the custody of minors, whether brought directly to Family Court by petition (Matter of Chin v. Wyman, 61 Misc 2d 641, supra; Matter of Chin v. Yen, 41 Misc 2d 650), as is done in the Supreme Court (Finlay v. Finlay, 240 N. Y. 429), or through transfer from or referral by the Supreme Court, and of the classes of persons named as parties in such proceedings, this court will retain jurisdiction and decide the issue of custody of the twins.
Undisputed are the following essential facts, namely, that the petitioner John O. Moffett and Margaret Lee Moffett were married on June 3, 1953 in Mississippi; twin children, John David and Robin Lee Moffett, were born to them on April 19, 1954; the parents became separated by Louisiana decree of January 15, 1957, and thereafter were divorced by Alabama decree of January 15, 1959, with custody in both proceedings awarded to the mother, subject to visitation rights in the father; the mother remarried for the third time in February, 1959, and moved with the twins in violation of the Louisiana and Alabama decrees, and unknown to the petitioner, to Rhinebeck, New York; in the latter part of 1960 petitioner first learned of the whereabouts of his children, and secured brief visitation *1008 with them in 1961, 1962, and 1964 in New Jersey and Dutchess County; then unable to bring about visitation at his home in Louisiana during the summer, petitioner brought habeas corpus returnable November 19, 1965 in the Dutchess County Supreme Court, and the proceeding was referred to Family Court; after a contested plenary hearing, held before me, this court on July 22, 1966 in a written decision now in evidence granted custody to the wife with visitation to the father in Louisiana each summer for three weeks, upon his posting bond of $1,500 for each child; the father exercised his summer visitation, posted the bond in cash, and the children were with him during 1966, 1967, 1968, and 1969; on June 17, 1970 the mother, who had moved to Hyde Park, died, unbeknown to petitioner, who first learned of her death when he made inquiry about that summer’s visitation; shortly thereafter petitioner commenced the habeas corpus proceeding now under consideration.
The plenary hearing held by this court was extended, and included an extensive presentation and examination of witnesses, and of exhibits, including many colored slides of the children’s activities during their summer visitations in Lousiana, as well as testimony from the court-appointed psychiatrist and psychologist who had examined both parties and the children immediately prior to the hearing.
This custody proceeding is unlike the usual one, where bitter parents battle between themselves, or parent is pitted against grandparents, for the custody of children, as in this instance a natural father opposes a stepfather after the death of the children’s mother.
While the petitioner as father is the natural and legal guardian of these twins, the issue of custody must not be decided upon a showing of mere legal title to their custody, but rather Family Court, acting with the same inherent powers as Supreme Court, the successor to the Court of Chancery, as the guardian of these infants, must determine the issue of custody in the light of what is in their best interest and welfare. (Wilcox v. Wilcox, 14 N. Y. 576.) Whether the procedural vehicle in a custody case is by writ of habeas corpus or by the historic remedy by petition in equity, the court always acts as parens patriae to do what is best in the interest of the minors, for to do otherwise would be adverse and deleterious to the welfare of a ward of the court.
The foundation of our law of custody seems firmly grounded upon the natural law and the inherent right of a parent to have charge of his child, caring for him, protecting him, bringing him up under his care, sharing together the joyful experiences *1009 of adolescent life, and bestowing upon Mm the love and affection which can only be known by those bound together by blood ties, in the advancement of his best interests and welfare.
The guiding principle which this court must now follow is clearly stated in People ex rel. Kropp v. Shepsky (305 N. Y. 465, 468-469) to be:
“ that age-old principle of human relations that 1 No court can, for any but the gravest reasons, transfer a child from, its natural parent to any other person * * * since the right of a parent * * *to establish a home and bring up children is a fundamental one and beyond the reach of any court (Meyer v. Nebraska, 202 U. S. 390, 399).’ (People ex rel. Portnoy v. Strasser, supra, 303 N. Y. 539, 542.) In the light of that principle, we find no basis for denying custody of the child to petitioner, its natural parent, who did not abandon it and against whom no showing of present unfitness has been made.
“It has often been said that a child’s welfare is the first concern of the court upon a habeas corpus proceeding, where the judge acts ‘ as parens patriae to do what is best for the interest of the child. ’ (Finlay v. Finlay, supra, 240 N. Y. 429, 433; see, also, People ex rel. McCanliss v. McCanliss, 255 N. Y. 456; People ex rel. Pruyne v. Walts, 122 N. Y. 238, 242.) However valid this statement may be in a contest for custody involving the parents alone, it cannot stand without qualification in a contest between parents and nonparents. The mother or father has a right to the care and custody of a child, superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood * * * Accordingly, we have sanctioned withholding the child from the custody of a parent who has abandoned or transferred the parental right, either expressly or by implication. * * * And, quite obviously, a parent who is ‘ a drunkard, an incompetent, a notoriously immoral person, cruel or unkind towards his child ’ (Matter of Gustow, supra, 220 N. Y. 373, 377), may have the child taken from him.
“Apart, however, from such special and weighty circumstances, the primacy of parental rights may not be ignored. In no case may a contest between parent and nonparent resolve itself into ‘ a simple factual issue as to which [affords] the better surroundings, or as to which party is better equipped to raise the child. ’ (People ex rel. Portnoy v. Strasser, supra, 303 N. Y. 539, 542.) And that is true even if the nonparent imtially acquired custody of the child with the parent’s consent. * * *
*1010 “ Except where a nonparent has obtained legal and permanent custody of a child by adoption, guardianship or otherwise, he who would take or withhold a child from mother or father must sustain the burden of establishing that the parent is unfit and that the child’s welfare compels awarding its custody to the nonparent ”. (Italics supplied.) (See People ex rel. Boulware v. Martens, 232 App. Div. 258, affd. 258 N. Y. 534; Matter of Jewish Child Care Assn. [Sanders], 5 N Y 2d 222.)
Petitioner is 38 years old, a college graduate, and a major in the Air Force Reserve. While he was a seminary student in graduate school when the proceeding began, he has not enrolled for this semester, and has assured the court he will not do so, but will delay his studies to sometime in the future so as to be with the children except during working hours. He has never been arrested, abstains from alcohol, and has no association with narcotics. He is a part-time Baptist pastor two Sundays a month, and with his opportunity for obtaining full-time employment in construction, accounting or teaching, in all where he has had previous experience, his annual income will approximate $10,000.
For the last 10 years, with exception of brief intervals, petitioner has contributed, without the compulsion of a court order, $90 a month for the children’s support, and he has sent letters, Christmas and birthday cards, and gifts to them. Each of the last four summers, he has taken them to his home in Louisiana for three weeks, posting the $3,000 bond each time. During one of the summer visits, he learned his daughter needed braces on her teeth, and he originated the undertaking of this work, and has paid $320 for the orthodontic correction.
The court-appointed psychiatrist and psychologist found the children to be normal, stable, and with no lack of capacity of understanding. Neither they nor their father are psychotic or manifest any emotional disorder which would alter the decision now made. While both witnesses indicated their preference that the children remain in their present environment, with prolonged visitations with the father, neither advanced sufficient reasons to conclude that these children are unable to adjust to a new environment and surroundings, particularly when they will have the companionship, love and affection of a father who is sincerely concerned about their welfare.
This court fully appreciates and considers the reasons the children advance for staying with their stepfather, such as their present way of life, their friends, and their school activities, and the court realizes the adjustments which the children *1011 and the petitioner will have to make and the emotional and psychological support and guidance which may be required of the father as a result of this decision that there is no legal basis for depriving this father of the custody of his children. (Matter of O’Carroll, 45 N. Y. S. 2d 545; People ex rel. Elkins v. St. Coleman’s Home, 205 Misc. 432.)
The record before this court allows no finding of present or prospective unfitness of the petitioner to have custody of his children, and the evidence clearly indicates that he at no time abandoned them. Furthermore, the record fails to support even a suspicious conclusion that the welfare of these children would be promoted by their being separated from their father; in fact this court finds that their best interest and welfare require otherwise.
For the foregoing reasons the writ of habeas corpus is sustained, and the custody of these two children awarded to petitioner. Since the issue of custody presented by the petition in equity has been resolved, such petition is dismissed.
So ordered forthwith.