William Berman, J.
By order to show cause, dated March 12, 1973, petitioners, Mr. & Mrs. M. apply to this court for the return of .their four children (three daughters, K- born Oct. 22, 1960; F- born June 20, 1962; R- horn March 14, 1968; and son N- horn Oct. 5,1966) from the Bureau of Child Welfare (BCW) and the Catholic Guardian Society. (CGS).
The children were originally placed with BCW in early 1968 when the parents were unfortunately unable to care for them. The son N- returned to his parents in 1969, and stayed with them for about 14 months until August, 1970, when he was again placed with BCW. CGS has been the agency supervising and caring for the needs of the four children.
The evidence in this case reveals an unusually unfortunate situation. Mrs. M. .was a mental patient in Bellevue Hospital, in Kings County Hospital, and in Pilgrim State Hospital on two occasions. Her last discharge from Pilgrim State Hospital was on March 7, 1973, to her husband’s custody.
Dr. John Abbott, a court psychiatrist, who examined Mr. and Mrs. M. and their four children, reiterated evidence given to the court by the social workers in this case.
*1004 The hoy N- was classified as " Unspecified Mental Retardation COS in consonance with Dr. Abbott’s finding and recommendation, and that of their staff, is applying to have 1ST- certified to Kings County State School.
The girl K- is mentally defective with some evidence of brain damage. The girl F- is classified as ‘ ‘ Mental Retardation Moderate ”. Both girls are in the same foster home where they are receiving the attention necessary to their progressing within their respective capacities. The social worker from CG-S testified that the foster parents are interested in adoption of both children.
The girl R- who is in a foster home was classified as immature but seems to be free of mental problems as serious as with the rest of the family. Here too the plan advanced by CGS is adoption by the foster parents.
In April, 1971, CGS arranged for visitation by the parents in contemplation of discharge of the children. This effort was in vain. The parents were unable to care for the children. There was some evidence of differences between the petitioners then and subsequently in 1972. When social workers from CGS tried to work with the parents, they received little co-operation from Mr. M. in regard to attending therapy sessions.
Dr. John Abbott reported .that Mr. M. has little insight into his own emotional problems and that Mrs. M. is not emotionally capable of adequately caring for her children. In view of the children’s problems the £< even greater strain on the parents ” would not warrant .returning the children to them.
This court on April 10,1973, ordered visitation to be arranged by CGS. Evidence given by witnesses of the visits on May 3, May .23, and June 23,1973, indicated a valid conclusion that the parents by their behavior are not aware of the children’s needs and are not capable of supplying them. Their immature behavior was detrimental to the well-being of the children.
During the hearing both petitioners comported themselves in such manner, that this court inevitably must conclude as hereinabove indicated. The petitioners are unable to react to the realities here existent.
The law has been well established that absent abandonment or that the parents are unable to or are unfit to care for the child, their interests are primary as against a third party (People ex rel. Scarpetta v. Spence-Chapin Adoption Serv., 28 N Y 2d 185; People ex rel. Portnoy v Strasser, 303 N. Y. 539).
*1005 The evidence herein is conclusive that the petitioners are unfit to assume their parental functions and to minister to the needs of the children.
In 1971 the Legislature amended section 392 of the Social Services Law, to provide for periodic review by the Family Court of the custody of all children in foster care for a continuous period of 24 months.
It is to be especially noted that the new provisions of section 392 do not indicate in any sense that the /best interests of the child will be served by returning the child to its natural parent absent unfitness or abandonment. Rather, the law describes several alternatives for the court .to follow in its order, including continuance of foster care, return of the child to the parent, guardian or relative, institution of proceedings to legally free the child for adoption or a direction to place the child for adoption in the foster home where he resides or with any other person or persons. Whatever alternatives the court employs is mandated to be in accordance with the best interests of the child. It is apparent that each of the. alternatives presented by the statute may, depending on the facts of each case, provide for the child’s best interests. No preference has been given to returning the child to its natural parents, although the court may, in its discretion, choose to so order.
In enacting the new provisions of section 392 of the Social Services Law, it is apparent the Legislature has recognized the desire to approach custody problems from a “best interests approach ”, in regard to foster care review. In discussing the purpose of this section, the court in Matter of Barbara P. (71 Misc 2d 965, 969) stated: “ The Legislature has thus expressed its intent to assure to children judicial review so that they will not be left without homes and will, where possible, be given the opportunity to grow up in homes where they will receive good care together with the sense of belonging and being loved that is essential to healthy development.”
This analysis of the statute’s purpose implies a strong trend towards assurance and promotion of the child’s well-being as the primary consideration in any court determination of custody. Returning the child to his natural parents would therefore be only one of many alternatives available to the court in promoting this primary consideration. This approach has been given support by scholars who have extensively examined the area of child custody. (New York Times, Magazine Section, p. 70. “The Psychological Parent Is The Real Parent ”, Rita J£ramer, Oct. 7, 1973.) That article refers *1006 to a soon to be published book, “ Beyond the Best Interests of The Child,” coauthored by Anna Freud, the daughter of Sigmund Freud, Joseph Goldstein, professor of law, science and social policy at Tale who specializes in the application of psychoanalysis to law, and Dr. Albert Solnit, director of the Child Study Center at Tale and professor of pediatrics and psychiatry. It suggests that in custody determinations, modern psychology advocates the primacy of considering a child’s psychological needs rather than the biologically based presumption that the natural parents are entitled to custody over non-parents absent unfitness or abandonment. The authors apparently feel the best interests of the child are more closely associated with a psychological need than with a biological relationship.
Certainly, the best interests of the children herein, would not be served by returning them to the petitioners. The facts indicate beyond any question as stated above, that the petitioners are unfit to assume the functions of parents and to minister to the needs of the children.
Application for custody dismissed.