George G. Bernhard, J.
This is a proceeding for adoption of an infant boy who was born in Stoneham, Massachusetts, on February 5, 1976. The proceeding, brought by residents of Dutchess County, was tried and fully submitted as was, simultaneously, a writ of habeas corpus brought on behalf of the natural parents, a married couple who are residents of Massachusetts. The habeas corpus proceeding was originated in Supreme Court, Dutchess County, and referred here by order of the Supreme Court dated May 14, 1976.
The record amply displays that the natural parents of the child had some economic and marital difficulties which culminated into their communicating a desire to put their expected child out for adoption. Shortly thereafter, this desire was communicated to the adoptive parents who have relatives in Massachusetts, through intermediaries. The result was that on or about February 9, 1976 the natural parents both executed a document entitled, "Parent’s Release and Consent to Adoption”, and acknowledged before a notary public and witnesses. The form used is the one used in adoption proceedings in probate courts in the Commonwealth of Massachusetts. At the same time, the natural parents delivered the baby boy to the adoptive mother in the presence of the natural mother’s attorney at his office. Indeed, while the infant was in the hospital, the birth certificate was permitted to state the baby’s name as "James Mickael,” a name chosen by the prospective adoptive parents with the natural mother’s consent. The natural father disclaimed being consulted in the matter of the name.
*962 Thereafter, the baby was brought to Dutchess County, State of New York, where this proceeding was commenced on notice to the natural parents, who oppose it and who have brought this writ of habeas corpus to regain custody. At the time of this decision, the infant is in the custody of the adoptive parents.
This case turns, in large measure, upon the impact of section 115-b of the Domestic Relations Law and examination of the Massachusetts form of surrender. In the court’s opinion, the Massachusetts form of surrender does not comply with the requirements of section 115-b of the Domestic Relations Law. This section outlines the procedures for consent to private placement adoption, revocation of such consent, and determination by the court. The section requires, inter alia, that the consent set forth the name and address of the court in which adoption proceedings are to be commenced, that a copy be given to each natural parent, and if the consent is acknowledged before a notary public (instead of the court having jurisdiction) that it be irrevocable by a writing received by the court within 30 days of commencement of the adoption proceeding. The proceeding is deemed commenced on the date that the matter is docketed by this court.
The papers signed in Massachusetts did not recite any proposed adoption proceeding in this court or any other specific court. In this court’s opinion, that failure is fatal to this adoption proceeding. This conclusion requires some discussion on the statutory scheme of section 115-b.
This statute, which purports to limit a most fundamental right, that of parenthood, must be construed strictly. (Matter of Monroe, 132 Mise 279.) The statute provides for a scheme whereby a consent document is executed by the natural parent or parents, clearly notifying that parent in what court and when they may file papers changing their mind and revoking the consent. Upon a proper revocation, the court is given several alternatives: i.e., granting the adoption proceeding and hence overruling the revocation; or denying the adoption proceeding and granting the revocation. Indeed, there is even provision for delivery of the child to a third party. (Emphasis added.)
Furthermore, the statute, where a proper form of consent to adoption has been filed, as well as a proper notice of revocation of such consent, goes on to overrule the historic presumption that a natural parent will not be deprived of custody *963 unless the natural parent is established, by clear and convincing proof, to be either unfit or unable to take care of the infant. (People ex rel. Kropp v Shepsky, 305 NY 465; People ex rel. Portnoy v Strasser, 303 NY 539.) Rather, this statutory scheme provides for a procedure when the proper form of consent is signed, and the proper revocation of such consent is filed, in which the court shall be guided solely by the "best interests of the child” without any superior rights of custody coming into play. (See Domestic Relations Law, § 115-b, subd 3, par [d], cl [v].)
However, on the delivery of the infant in this case, the papers signed in Massachusetts did not contain the fundamental notification of the venue in which this proceeding was to be commenced so as to bring into applicability the statutory procedure under section 115-b. Because of this failure, the court must be guided by the common-law presumptions which obtain as to custody.
The proof in this proceeding indicated that the adoptive parents are individuals of acceptable character capable of caring for the infant in Dutchess County. But the proof did not establish that the natural parents are either unfit or incapable of caring for the infant (Matter of Anonymous, NYLJ, May 2, 1974, p 18, col 2), it merely showed that they were victims of economic and personal pressures who wish sincerely to regain custody of their child. This was particularly borne out by the fact that a check delivered to them in the sum of $190, for prenatal expense, on behalf of the adoptive parents, was not cashed. There is also indication on the record that proper New York forms of adoption containing the necessary recitals under section 115-b of the Domestic Relations Law were forwarded to Massachusetts for signature, but not signed. Under the circumstances, the court rules that the papers executed by the natural parents do not comply with section 115-b of the Domestic Relations Law so as to remove the presumptions in their favor of a superior right to custody of this child. So, too, there has been a complete failure of proof of unfitness or incapability on the part of these natural parents.
Counsel for the adoptive parents urges that the revocation of consent was not filed within the 30 days mandated by section 115-b. Of course, this is answered by the ruling that section 115-b is not applicable. Nevertheless and in addition, the written revocation of consent was received by this court *964 on May 12, 1976, which is within 30 days of service of notice of the petition for adoption upon the natural parents. It would be inconceivable for one to attempt to compute the 30 days from April 1, 1976, the filing date of the petition, since an ex parte filing in a court of which respondents have been given no knowledge or warning in the consent form, could not be conceived to give such notice and opportunity as to satisfy the most fundamental requirements.
Accordingly, there being a superior right to custody in the natural parents, the adoption proceeding is dismissed, without costs, and the writ of habeas corpus is sustained, without costs, so that the infant shall be delivered to the natural parents at the office of Levine & Levine, Esqs., at 55 Market Street, Poughkeepsie, New York, attorney for the adoptive parents, on May 25, 1976 at 1:00 p.m., unless counsel stipulates to a sooner time or place.