OPINION OF THE COURT
Howard Miller, J.
The Commissioner of Social Services, County of Rockland, petitions to commit the guardianship of the person and custody of Sarah Joan Strausberg, to the commissioner, by reason of the mental retardation of the natural mother pursuant to section 384-b (subd 4, par [c]) of the Social Services Law of the State of New York and to permit the adoption of the child upon the granting of the petition without further notice to the respondent. The parties stipulated that in the event that the court finds against the petitioner in these proceedings, that the court may treat this case as a review pursuant to section 392 of the Social Services Law. Barbara Strausberg, now known as Barbara Brunken, the mother, hereinafter called the respondent, was represented by assigned counsel and the infant, Sarah Joan Strausberg, was represented by a Law Guardian (Matter of Orlando F., 40 NY2d 103, 112).
The infant, Sarah Joan Strausberg, born out of wedlock on July 7, 1974, has been in the care of the Commissioner of Social Services since July 12, 1974 when the child was five days of age. It would appear from the record that the father’s whereabouts are unknown. The respondent testified that shortly after the birth of the child she ran away from Letch-worth Village, a State mental health facility where she was a resident, got married and moved to New York City with her husband and his family. The respondent is presently 33 years of age, has completed the ninth grade of school and can read and write. Both during and after her residency at Letchworth Village, she claims that she has held down positions of employment doing domestic work and other menial type jobs for which she has been trained. During the period that the child has been in foster care she has visited regularly coming from *622 New York City by herself using public transportation. She has recently moved to the State of Virginia where she is residing with her husband and his two children, her husband’s brother and his wife and two children. Although she is not presently employed she is supposed to bear some of the responsibility of maintaining the household where she resides and caring for her husband’s children.
The petitioner, the Commissioner of Social Services, is requesting guardianship of the infant, Sarah Joan Strausberg, based upon the allegation that the respondent mother is mentally retarded pursuant to section 384-b (subd 6, par [b]) of the Social Services Law, which defines mental retardation as follows: "(b) For the purposes of this section, 'mental retardation’ means subaverage intellectual functioning which originates during the developmental period and is associated with impairment in adaptive behavior to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child as defined in the family court act.”
The issues before the court are: (1) whether the respondent is a retarded person as contemplated under section 384-b of the Social Services Law; and (2) would the child, if returned to the mother, be in danger of becoming a neglected child?
At the direction of the court the respondent was examined by a certified psychologist, a psychiatrist and a neurologist. The neurological report of Dr. Marvin C. Shapiro, admitted into evidence by consent of all the attorneys, indicated that there are no signs of previous cerebral injury or present neurologic dysfunction. The testimony of the court-ordered certified psychologist, Dr. Joseph Zacker, found that the respondent Barbara Brunken possesses subaverage intellectual capacity and also subaverage social maturity to an extent that a child in her custody would be unlikely to have a normal family life. The testimony of the court-ordered psychiatrist, Dr. Yusef Salim indicated a diagnosis of mental retardation without psychosis. Both of the afore-mentioned witnesses testified at length to the fact that the respondent is limited in her capacity and does not now appear to be able to provide proper and adequate care for the child and is unlikely in the foreseeable future to provide such care. Both witnesses testified that Barbara Brunken was competent to testify on her own behalf.
In addition to the testimony of the court-appointed expert witnesses, the respondent presented the testimony of her own *623 psychiatrist, Dr. Robert C. Palmer. Dr. Palmer diagnosed the respondent to be a person with mild mental retardation with inadequate personality features. He did not believe that she would consciously neglect the child but had serious doubts whether the respondent could adequately care for her daughter, Sarah. He further testified that he believed that the respondent with proper training and a great deal of assistance could provide adequate and proper care for the child in the future. His suggestion was that the respondent return to Rockland County, that the child remain in foster care and that both mother and child participate in training at the child development center with an aim toward future return of the child.
A summary of the expert testimony adduced at the hearing showed the respondent to be a borderline retarded person, who under stress is easily confused in her thinking; that at the present time and in the immediate future the respondent has little understanding or capacity to provide the nurturance, structure and controls and fulfill other emotional needs of a developing child.
The infant, Sarah Joan Strausberg has been in foster care since five days after birth on July 7, 1974. It is during this significant nurturing period that the child was guided by a foster mother who is the only person responding to her day-today needs. In this court’s opinion the visitations made by the respondent, although in good faith on her behalf, were not productive to the child. The respondent at the present time is incapable of properly caring for her child and it is problematical if in the foreseeable future she will be capable or available to be trained to a degree where she can adequately care for the child. The older the child gets the more difficult it will become for the respondent to fulfill the parental role and provide the direction, structure and other emotional needs of the child herein. The infant, Sarah Joan Strausberg, should not be held in limbo for this indefinite period of time for the purposes of training the respondent in the area of child care. It is this court’s belief that such a program would be prolonged and would in no way be guaranteed of success. This is particularly so by view of the fact that the respondent presently lives in Virginia out of the jurisdiction of this court.
Guidelines on the termination of parental rights have been provided by the New York Court of Appeals in the case of Bennett v Jeffreys (40 NY2d 543, 546) that held: "The *624 parent has a 'right’ to rear its child, and the child has a 'right’ to be reared by its parent. However, there are exceptions created by extraordinary circumstances, illustratively, surrender, abandonment, persisting neglect, unfitness, and unfortunate or involuntary disruption of custody over an extended period of time.”
Bennett v Jeffreys (supra) separated parents’ rights from a child’s rights. The child is no longer considered as a chattel of a parent, distinguishing the more recent trend away from the earlier, more dominant right of a parent as voiced in People ex rel. Kropp v Shepsky (305 NY 465) and People ex rel. Portnoy v Strasser (303 NY 539). The court in Bennett v Jeffreys (supra, p 546) concluded: "The day is long past in this State, if it had ever been, when the right of a parent to the custody of his or her child, where the extraordinary circumstances are present, would be enforced inexorably, contrary to the best interest of the child, on the theory solely of an absolute legal right. Instead, in the extraordinary circumstance, when there is a conflict, the best interest of the child has always been regarded as superior to the right of parental custody. Indeed, analysis of the cases reveals a shifting of emphasis rather than a remaking of substance. This shifting reflects more the modern principle that a child is a person, and not a subperson over whom the parent has an absolute possessory interest. A child has rights too, some of which are of a constitutional magnitude (cf. Goss v Lopez, 419 US 565, 574; Matter of Winship, 397 US 358, 365; Tinker v Des Moines School Disk, 393 US 503, 506; Matter of Gault, 387 US 1, 47).”
The guidelines and principles which are enunciated by the court in Bennett v Jeffreys (supra) cannot be confined to the limited area of custody. The Appellate Division in Matter of Kim Marie J. (59 AD2d 716), considered these guidelines and principles and followed them in a permanent neglect matter. So, too, these same guidelines should direct the court in a guardianship matter as in the case at bar.
In discussing "extraordinary circumstances” the court in People ex rel. Gallinger v Gallinger (55 AD2d 1036) cites additional factors in considering the best interest of the child. They are: "the age of the child, the fact and length of custody by the nonparent, the psychological trauma to the child of removing it from its present environment and the qualifications, circumstances and backgrounds of the parent and non-parent custodian.”
*625 Upon considering all of the testimony and exhibits in this matter this court finds that there is clearly convincing proof that respondent is a retarded person with subaverage intellectual functioning as defined in section 384-b (subd 6, par [b]) of the Social Services Law to the extent that if the infant, Sarah Joan Strausberg, were placed in or returned to the custody of the parent, the respondent herein, the child would be in danger of becoming a neglected child. Accordingly, the guardianship of Sarah Joan Strausberg is granted to the Commissioner of the Department of Social Services for the County of Rockland who is directed to release the child for adoption without the consent being required of the natural parent.