THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANONYMOUS, Appellant, v. NEW YORK FOUNDLING HOSPITAL, Respondent.

First Department, October 4, 1962.

*Abraham L. Kramer* of counsel (*Henry B. Selkowe* with him on the brief), for appellant.

*Frank E. Schwelb* of counsel (*Mudge, Stern, Baldwin & Todd,* attorneys), for respondent.

BREITEL, J. P.  Relator, the unwed mother of an illegitimate child, appeals from a final order dismissing her writ and petition of habeas corpus seeking to regain custody of the child. Respondent is an agency authorized under the statutes to receive the absolute surrender of children for adoption. Relator had by formal writing surrendered the child.

The child was born January 19, 1961.  The mother executed a surrender agreement for the child on March 30, 1961 in favor of respondent agency.  Shortly thereafter the child was placed with foster parents, looking to eventual adoption.  The mother demanded return of the child.  Return was refused and this proceeding was brought in which the mother asserts that by fraud, pressure, and undue influence she was coerced into signing the surrender agreement.  By agreement, adoption has been postponed pending the determination of this case.

Depending upon whose proof is accepted, the mother sought return of the child either as early as April 2, 1961 or as late as in November, 1961.  It was evident in her letter of September 25, 1961, however, that a demand for a return was impending. It was on April 12, 1961, less than two weeks after the signing of the surrender, that the child was placed in a foster home.

Special Term, after a hearing, concluded that the mother's charges were not sustained.  It held that the best interests of the child, as well as the public policy in favor of authorized agencies for adoption, dictated a dismissal of the petition.

The order dismissing the writ and petition should be affirmed.

While the record does not establish that the surrender was obtained by any improper means, that is not dispositive.

The statute provides for an absolute surrender of destitute or dependent children to an authorized agency provided there be court approval (Social Welfare Law, § 384).  The statute also authorizes the return of such child to the surrendering parent if the court determines " that the interest of such child will be promoted thereby and that such parent is fit, competent and able to duly maintain, support and educate such child " (*ibid.,* § 383). It has been repeatedly held that the judicial power to return the child is a significant one and that the primacy of status of the natural parent is not lessened by the mere fact of surrender under the statute.  Thus, in a landmark opinion by Mr. Justice

Botein, now Presiding Justice of this court, also in a surrender revocation proceeding, it was said: "So important is the status of a natural parent, that in determining the best interests of the child, it may counterbalance, even outweigh, superior material and cultural advantages which may be afforded by adoptive parents; provided, of course, that the parent ' is fit, competent and able to duly maintain, support and educate such child ' (Social Welfare Law, § 383, subd. 1). For experience teaches that a mother's love is one factor which will endure, possibly endure after other claimed material advantages and emotional attachments may have proven transient." (*People ex rel. Grament* v. *Free Synagogue Child Adoption Comm.*, 194 Misc. 332, 337–338.)

Quite recently the Appellate Division for the Third Department, citing the *Grament* case and applying the very principles there stated, required the return of a child subsequent to surrender to an authorized agency but before adoption by foster parents (*Matter of Geiger [Church Counseling Serv.]*, 6 A D 2d 977).

Indeed, the Court of Appeals (per Fuld, J.), in a case involving the revocation of an adoption, and, therefore, a situation a fortiori when compared to that here, stated:

" However, a question of law does here confront us — a question deriving from that age-old principle of human relations that ' No court can, for any but the gravest reasons, transfer a child from its natural parent to any other person    *    *    *    since the right of a parent    *    *    *    to establish a home and bring up children is a fundamental one and beyond the reach of any court (*Meyer* v. *Nebraska*, 262 U. S. 390, 399).' (*People ex rel. Portnoy* v. *Strasser, supra,* 303 N. Y. 539, 542.) In the light of that principle, we find no basis for denying custody of the child to petitioner, its natural parent, who did not abandon it and against whom no showing of present unfitness has been made.

" It has often been said that a child's welfare is the first concern of the court upon a habeas corpus proceeding, where the judge acts ' as *parens patriæ* to do what is best for the interest of the child.' (*Finlay* v. *Finlay, supra,* 240 N. Y. 429, 433; see, also, *People ex rel. McCanliss* v. *McCanliss*, 255 N. Y. 456; *People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238, 242.) However valid this statement may be in a contest for custody involving the parents alone, it cannot stand without qualification in a contest between parents and nonparents. The mother or father has a right to the care and custody of a child, superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood. (See,

e.g., *People ex rel. Portnoy* v. *Strasser, supra,* 303 N. Y. 539, 542; *People ex rel. Beaudoin* v. *Beaudoin,* 193 N. Y. 611, affg. 126 App. Div. 505; *Matter of Livingston,* 151 App. Div. 1, 7; cf. *Matter of Gustow,* 220 N. Y. 373.)   *   *   *

'' Apart, however, from such special and weighty circumstances, the primacy of parental rights may not be ignored.   In no case may a contest between parent and nonparent resolve itself into ' a simple factual issue as to which [affords] the better surroundings, or as to which party is better equipped to raise the child.'   (*People ex rel. Portnoy* v. *Strasser, supra,* 303 N. Y. 539, 542.)   And that is true even if the nonparent initially acquired custody of the child with the parent's consent.   (See, e.g., *People ex rel. Beaudoin* v. *Beaudoin, supra,* 126 App. Div. 505, 507, affd. 193 N. Y. 611; cf. *Matter of Bistany,* 239 N. Y. 19.) ''   (*People ex rel. Kropp* v. *Shepsky,* 305 N. Y. 465, 468–469.)   (See, also, *People ex rel. Anonymous* v. *Anonymous,* 10 N Y 2d 332, 335 [FULD, J.]; 25 N. Y. Jur., Habeas Corpus, § 80.)

It stands to reason that the unwed mother of an illegitimate child, no matter how much advice she may have received, is under great internal pressures.   Even if these are largely of her own doing, they would prevent her from making the kind of settled decision to which either the law or the courts should attach the significance they would to an ordinary less personal contract freely made.   This means that an authorized agency has a special obligation, completely reviewable by the courts, to consider an early change of mind by the surrendering parent with the most circumspect sympathy and consideration.   The policy urged that, if surrender may be undone, authorized agencies will be inconvenienced or even frustrated in their placement of children is not a sufficient counterweight.   The fact of relationship between a natural parent and child ought not to be subordinated to such considerations, important as they are.

Perhaps the most significant factor to be considered in cases of this kind is the motivation of the mother in seeking return of the child.   It is recognized that very often there is a substantial risk of improper motivation.   In such case the authorized agency and the court must be especially alert not to permit the improper motivation to endanger the interests of the child or lead to any other noxious consequence.   As important as this factor is, however, it is also true that the change of mind by a natural parent is not an evil thing.   Instead, the change of mind is to be accorded great sympathy, and, in a proper case, encouragement and favorable action.   This does not mean that a mere change of mind is sufficient, prior to adoption, to justify return of the child.   There are, of course, many factors which should influence the court

(see, e.g., *People ex rel. Grament* v. *Free Synagogue Child Adoption Comm.*, 194 Misc. 332, *supra*).

Considering the record in this case, there is enough to cast grave doubt on whether relator has so stabilized her own relationships or become so stable in her own mind to suggest the return of the child to her. Since, especially with the passage of time, the interests of the child would be seriously and increasingly jeopardized by return, the petition was properly dismissed. On the other hand, this determination is not dictated or materially strengthened by the fact of the child's illegitimacy, or the operational needs of the authorized agency.

Because the passage of time in determining the custody of the child may be so deleterious to the child and the foster parents, proceedings of this kind must be initiated and prosecuted with maximum expedition. Such proceedings are also entitled to every priority in handling on trial and appeal.

Accordingly, the final order dismissing the habeas corpus should be affirmed, without costs.

RABIN, VALENTE, EAGER and STEUER, JJ., concur.

Order entered on February 28, 1962, unanimously affirmed, without costs.