OPINION OF THE COURT
Dan Lamont, J.
The Schoharie County Department of Social Services seeks judicial approval of surrender instruments signed by respondent, Barbara G., natural mother of John J. and Delia L. Respondent has filed an answer opposing the petitions and seeking to revoke and annul both surrender instruments and to regain custody of her children. For the reasons which follow, this court holds and determines that the applications to approve the surrender instruments should be denied, and that respondent natural mother upon her cross petitions to revoke the surrender agreements and to regain custody of her children should be awarded custody of her two children.
A fact-finding hearing was conducted before me on February 26, February 27, and March 6, 1987.
The following witnesses testified on behalf of the petitioner: Mrs. Phyllis Finch, former supervisor of Children’s Services, Schoharie County Department of Social Services; Barbara Coons, caseworker, Department of Social Services; and Mr. John C., natural father of the children. The testimony of Phyllis Finch appeared straightforward and candid. The testimony of Barbara Coons likewise appeared generally straightforward and truthful; however, her version of the material events during August 1986 appeared colored somewhat by her interest in the outcome of these proceedings. The testimony of John C., while generally credible, was clearly colored by his intense interest in the outcome of these proceedings.
Mrs. Judy Gilliom and Mrs. Cheryl Cawley of the Schenectady YWCA, and the respondent’s mother, Cecelia G., testified for respondent, who also gave testimony in her own behalf. The testimony of Judy Gilliom and Cheryl Cawley is found frank, candid, and credible. The testimony of Cecelia G. while generally credible was quite vague and uncertain in many material respects, and also appeared colored by her interest in the outcome of these proceedings. Although the respondent, Barbara G., is an interested witness, her demeanor was candid *730 and straightforward and her testimony had the force and flavor of credibility.
Neither the Law Guardian nor the attorney for the prospective adoptive parents called any witnesses or presented any evidence.
Exhibits introduced into evidence by the petitioner included a letter dated October 6, 1986, from respondent Barbara G., medical treatment notes, adoption placement recording entries, the surrender instruments, and religious designation forms.
The respondent introduced into evidence the Department of Social Services running record, Cecelia G.’s August to October 1986 telephone bills, the YWCA file for Barbara G., notice of hearing and affidavits of service, and Barbara G.’s birth certificate.
All of said exhibits introduced into evidence are given substantial credence and weight by the court.
Based upon the evidence adduced at the fact-finding hearing, the court makes the following findings of fact:
FINDINGS OF FACT
Barbara G. (hereinafter called respondent) gave birth to Delia L. on May 9, 1984, when respondent was only 15 years of age and in eighth grade. Respondent gave birth to John J. on May 10, 1985.
After a stormy relationship with John C., which included physical abuse, respondent separated from John C. and thereafter moved to Cobleskill in about February 1986 with one Sam T. She obtained public assistance and eventually moved both of her children to a sparsely furnished apartment on East Main Street in Cobleskill which she shared with T.
On April 22, 1986, respondent telephoned an adoption worker at Schenectady County Department of Social Services, with whom she had previously discussed surrendering her second child at birth. When told that Schenectady County had no jurisdiction, she then called the Schoharie County Department of Social Services and said that she wanted to surrender both of her children for adoption that day.
Phyllis Finch and Barbara Coons went to respondent’s apartment in Cobleskill that same afternoon. The social workers informed respondent that day-care services, a parent aide, counseling, and caseworker support could be furnished, or *731 that respondent could voluntarily place her children temporarily in the care of the Department. The respondent insisted that she had thought about her situation and had determined to surrender her children for adoption.
Barbara Coons obtained the names and birth information relative to the children and the name of the natural father from the respondent and completed the blanks in the surrender form. The respondent stated that she wanted the children placed together. Mrs. Finch read and explained the surrender instruments to the respondent paragraph by paragraph, and the respondent said that she understood. The respondent was again offered preventative services and assistance in raising her children, but stated that her mother and the child’s father had talked her out of surrendering John J. when he was born, and had not helped or supported her like they had promised.
The respondent then signed both surrender instruments and the religious designation forms. Barbara Coons signed both surrender instruments as a witness on April 22, 1986. No copies of the surrender instruments were given to the respondent.
The respondent was unkempt and messy, and the children both appeared ill and congested, smelled of urine, and were not clean; however, both children appeared well fed. The children were taken by the caseworkers to a physician to be examined, and were placed in a foster home.
The respondent has an eighth-grade education, and testing done at the YWCA in August 1986 indicates reading comprehension and vocabulary at eighth- and ninth-grade levels. When respondent signed the surrender instruments, she felt alone and deserted, as if she were going crazy. The respondent was frail and pale, tired and unkempt. When the respondent spoke to her mother by telephone after signing the surrender instruments, she was confused and crying, but refused to discuss the surrenders.
On April 24, 1986, John C., the natural father, and Cecelia G., the maternal grandmother, came to the Schoharie County Department of Social Services. John C. stated that he wanted custody of the children, and that Cecelia and his sister would help him. He was told that home studies and an investigation would be required. The natural father and maternal grandmother then visited with the children at the foster home.
On April 25, 1986, Phyllis Finch and Barbara Coons went to respondent’s apartment in Cobleskill to pick up the children’s *732 clean clothes. The respondent came out and sat in the county vehicle. She appeared clean, well rested, well dressed, and well groomed. She expressed contentment with her decision to surrender her children. When advised that the children’s father and respondent’s mother were seeking custody of the children, respondent indicated that they should not have custody because her mother was not fit to take care of the children. Respondent was again offered services and assistance which she declined, and was again advised that she had 30 days from April 22nd to change her mind and revoke the surrenders.
Other than Cecelia G. calling in May 1986 to arrange visits with the children by herself and the natural father — which visits were arranged, but never took place — absolutely no communication or activity occurred between the Department of Social Services and the respondent or the natural father between April 25, 1986 and August 18, 1986. Neither the respondent nor John C. ever contacted the Department of Social Services or made any efforts to visit the children, communicate with the children, or express any interest in the children. During the period from April 25, 1986 to August 18, 1986 the Department of Social Services made no contacts with the natural father.
The petitions pursuant to Social Services Law § 384 (4) seeking judicial approval of the surrender instruments are dated July 17, 1986 and were verified by the Commissioner of Social Services on August 15, 1986, and bear the signature of the Assistant County Attorney designating approval as to form and content.
On August 18, 1986, the Schoharie County Department of Social Services received a telephone call from respondent relative to the children.
On August 19, 1986, the respondent told Barbara Coons that she would like her children back, and that she wanted to visit her children.
On August 21, 1986, Barbara Coons picked the respondent up in Schenectady and brought her to the foster home in Schoharie County to visit the children. The respondent told Barbara Coons about changes in her life and stated that she wanted her children back. Barbara Coons told respondent that papers had been filed in Family Court seeking approval of the surrender instruments, and that respondent could seek return of the children through the Family Court proceedings. Respon *733 dent was informed that since the natural father had not signed a surrender instrument and the children had not been placed for adoption, the respondent could possibly obtain her children back — depending upon home studies and investigations indicating whether or not the respondent could properly care for the children.
On the very next day — August 22, 1986 — John C. telephoned Barbara Coons because he had heard that respondent wanted her children back. He said that he either wanted custody of the children or he would sign surrenders for adoption, but that he didn’t want the children to go back to their mother because she couldn’t take proper care of them.
On August 25, 1986, Barbara Coons talked to Judy Gilliom at the Schenectady YWCA and confirmed that respondent had enrolled in a GED and job training program, and had requested day-care services for her two children.
On August 26, 1986, Barbara Coons met with John C. in Scotia, New York. Mr. C. told Barbara Coons that he would not let respondent get her children back, and that he would surrender the children if they could be placed for adoption immediately. Barbara Coons told John C. that she would place the children immediately for adoption, and John C. signed surrender instruments as to both children.
On August 27, 1986, Barbara Coons spoke with respondent by telephone. She told respondent that John C. had said that the children should either be adopted or he should have custody, but that the children should never go back to their mother. She told respondent that since John had now signed surrender instruments and wanted the children placed, that meant that respondent could no longer get her children back. Barbara Coons told respondent that she wanted to place the children in an adoptive home, and the respondent indicated that if there was no way she could get her kids back, then they could be placed in an adoptive home.
On August 28, 1986, both children were placed together in the home of adoptive parents, and the fact of such placement, the date thereof, the date of the agreement pertaining thereto, and the names and addresses of the adoptive parents were recorded in a bound volume maintained by the agency for the purpose of recording such information in chronological order.
Sometime between August 15, 1986 and August 22, 1986, the petitions seeking judicial approval of the surrender instruments were filed in the Schoharie County Family Court and *734 were docketed on August 22, 1986. Thereafter, the petitions were returned to Social Services by the Chief Clerk either because copies of the surrender instruments were not attached to the petition or because the surrender instruments were not acknowledged by a notary public.
Barbara Coons as the witness on the surrender instruments acknowledged her signatures before a notary public on September 3, 1986, and both surrender instruments were recorded in the Schoharie County Clerk’s office on September 3, 1986.
The petitions seeking judicial approval of the surrender instruments were refiled with the Family Court Clerk on or about September 20, 1986, with the original acknowledged, recorded surrender instruments annexed thereto. On September 24, 1986, a notice of proceeding for approval of an instrument of surrender returnable October 28, 1986 was mailed to the respondent at her Cobleskill address as listed on the petition dated July 15, 1986 and a copy made for personal service upon the respondent.
On October 7, 1986 the Schoharie County Department of Social Services received a certified letter dated October 6, 1986 from the respondent stating that the surrender instruments were revoked.
Because the respondent could not be personally served in Cobleskill with the notice of proceeding and petition at least 20 days prior to October 28, 1986, the proceedings seeking approval of the surrender instruments were rescheduled for November 25, 1986 and another notice issued from the Schoharie County Family Court on October 23, 1986. The respondent was personally served with the notices of proceeding, petitions, and copies of the surrender instruments on October 29, 1986.
CONCLUSIONS OF LAW
While the petitioner’s actions in obtaining surrender instruments from the respondent on April 22, 1986, should certainly not be encouraged or condoned, the court concludes that the respondent knowingly and voluntarily signed the surrender instruments in the presence of Barbara Coons, who signed as a witness. This conclusion is reinforced by the respondent’s expression of contentment with her decision on April 25, 1986, and the respondent’s failure to even attempt to visit or maintain any contact with the children from April 22, 1986 to August 19, 1986.
*735 The court further concludes that respondent has failed to prove any fraud, duress, or coercion by the agency in the execution or inducement of the surrender instruments.
However, the events and transactions between August 19, 1986 and August 28, 1986 — when respondent clearly expressed and communicated to the agency a desire and request to regain custody of her children, and the agency’s statements and actions in response thereto — cannot withstand judicial scrutiny and do not accord with principles of fundamental fairness.
Furthermore, the surrender instruments themselves as of August 21, 1986 did not comply with a number of requirements specifically imposed by statute as a precondition to a valid surrender.
Unfortunately, the agency failed to petition the Family Court for approval of the surrender instruments within 30 days following removal of the child from the home as it is admonished to do pursuant to subdivision (1) of section 358-a of the Social Services Law. Had the surrender instruments been duly acknowledged and recorded and had the petitioner accepted this admonition, the substantial problems and emotionally shattering implications now manifest in this proceeding could well have been avoided. However, such failure to timely petition does not in and of itself affect the validity of the surrender instruments. (Social Services Law § 384 [4].)
Social Services Law § 384 (3) on April 22, 1986 provided in applicable part as follows: "The instrument herein provided shall be signed and shall be (a) acknowledged or (b) executed in the presence of one or more witnesses and acknowledged by such witness or witnesses, in either case before a notary public or other officer authorized to take proof of deeds and shall be recorded in the office of the county clerk in the county where such instrument is executed” (emphasis supplied).
The within surrender instruments were not acknowledged or recorded until September 3, 1986, and this court holds and determines that such surrender instruments were therefore not "duly executed and acknowledged” until September 3, 1986, after respondent had requested the...return of her children.
Social Services Law § 384 (5) provides in applicable part as follows: "If a duly executed and acknowledged adoption surrender shall so recite, no action or proceeding may be main *736 tained by the surrendering parent or guardian for the custody of the surrendered child or to revoke or annul such surrender where the child has been placed in the home of adoptive parents and more than thirty days have elapsed since the execution of the surrender” (emphasis supplied).
The Appellate Division, First Department, on February 26, 1987 (the very day the within fact-finding hearing commenced) handed down a decision containing the following statements:
"It is axiomatic that there must be strict construction of statutes in derogation of the common law such as section 384. 'Also, and more importantly, it [strict construction] is required by the delicate and definitive nature of the adoption proceeding, which fundamentally touches and radically alters the lives of all concerned. Precise and exacting compliance with the procedures mandated * * * is imperative.’ (Dennis T. v Joseph C., 82 AD2d 125, 129.) This is especially true under the circumstances herein, where the proper execution and filing of a form of surrender pursuant to the statute will substitute a 'best interests of the child’ test for the presumption that a natural parent will not be deprived of custody unless she or he is established by clear and convincing proof to be unfit or unable to properly care for a child (Social Services Law § 383 [6], formerly § 383 [5]).
"We are concerned here not with technicalities, but with procedural requirements which were created by the Legislature in order to ensure that the most critical of human relationships, mother and child, would not be easily abrogated.” (State of New York ex rel. Dunn v Catholic Home Bur. for Dependent Children, 125 AD2d 106, 112 [1st Dept 1987].)
This court holds and determines that respondent on August 19, 1986 and August 21, 1986 gave sufficient oral notification to Barbara Coons — the employee of the agency who actually witnessed the surrender instruments — that she wished to revoke the surrenders and regain custody of her children (see, Matter of Revette, 97 Misc 2d 699 [Fam Ct, Onondaga County 1977]). At the time the respondent notified Barbara Coons of her wishes to regain custody of her children, the surrender agreements had not even been acknowledged by the witness; accordingly, the court holds and determines that the provisions of Social Services Law § 384 (5) were not then applicable. This court holds and determines that the respondent then had a right to revoke the surrender instruments, or at least commence a legal proceeding and have a hearing as to *737 whether or not the children should be returned to her custody. She was specifically informed by the agency on August 21, 1986 that she could request the Family Court to return her children to her when the proceeding for approval of the surrender instruments came before the court for a hearing.
On August 26, 1986, the petitioner obtained surrenders for adoption from the natural father, and assured him that the children would be placed in an adoptive home.
On August 27, 1986, the respondent was advised that since the natural father had signed irrevocable consents for adoption, she could no longer seek to have her children returned to her custody. Since the children had not yet been placed in an adoptive home and since the surrender instruments themselves had yet to be acknowledged by the witness before a notary public, such advice to respondent was misleading and simply not true. After having been orally notified by respondent that she wanted to regain custody of her children, the petitioner agency then acted ill-advisedly and in bad faith by telling respondent that it was too late for her to do anything and placing the children in an adoptive home on August 28, 1986.
The ultimate judicial scrutiny to be applied to any interaction or transaction between a public agency and a private citizen is one of fundamental fairness and fair play. This court holds and determines that the actions of petitioner between August 19, 1986 and August 28, 1986 do not meet minimal standards of fundamental fairness.
The actions of the agency caseworker in preparing and the agency attorney in approving for filing in Family Court the petitions for approval of surrender instruments which were not even acknowledged by the witness reveal a lack of understanding by the petitioner agency as to statutory requirements for due execution and acknowledgment of surrender instruments and the legal meaning and effect of surrender instruments; thus, the respondent seeking to regain custody of her children was misinformed and misled regarding her legal rights and recourse. In fact, the agency by thereafter obtaining surrender instruments from the natural father and then placing the children in the home of adoptive parents entered upon a course of conduct designed to extinguish whatever legal rights or recourse the respondent might have left.
The respondent natural mother’s attempt to revoke or annul the surrender and obtain custody of her children should *738 not be hampered by the ill-advised adoptive placement which occurred on August 28, 1986, after the respondent on August 21, 1986 had expressed a desire to regain custody of her children and had been specifically told to raise those issues before the Family Court and was thereafter on August 27, 1986 misinformed that she could do nothing to revoke or annul the surrender instruments or regain custody of her children.
An analysis of the applicable statutes and reported cases considered together reveals the following legal rules and principles following execution by natural parents of surrender instruments:
Rule 1. If the agency has physical custody of a child pursuant to a surrender instrument which is not duly executed, acknowledged, and recorded in the County Clerk’s office, the natural parent has the right to the return of the child because the surrender instrument itself does not comply with statutory requirements and is therefore not complete and valid. (State of New York ex rel. Dunn v Catholic Home Bur. for Dependent Children, supra.)
Rule 2. If the surrender instrument is properly executed, acknowledged, and recorded, a natural parent can still change his or her mind and attempt to regain custody of the child, aided by the presumption that the best interests of the child will be promoted by returning the child to the natural parent. (State of New York ex rel. Dunn v Catholic Home Bur. for Dependent Children, supra; People ex rel. Patricia ”BB” v Albany County Dept. of Social Servs., 47 AD2d 974 [3d Dept 1975].) Absent clear and convincing proof that the natural parent is unfit, the child must be returned by the court.
Rule 3. If Social Services Law § 384 (5) is fully complied with relative to due execution, acknowledgment, and recording of the surrender instrument, and where the child has been placed in the home of adoptive parents and more than 30 days have elapsed since the execution of the surrender, then the natural parent seeking return of the child loses the benefit of the presumption stated in rule 2 (People ex rel. Scarpetta v Spence-Chapin Adoption Serv., 28 NY2d 185; Podmore v Lady of Victory, 82 AD2d 48 [4th Dept 1981]). An action to revoke the surrender instrument based upon fraud, duress, or coercion remains unaffected (Social Services Law § 384 [5]).
Rule 4. Until there has been an actual adoption, or the agency has fully met the Statute of Limitations requirements *739 contained in Social Services Law § 384 (5), the surrender instrument remains subject to judicial supervision (People ex rel. Scarpetta v Spence-Chapin Adoption Serv., supra; Matter of Franciska J. GG v Duguette, 64 AD2d 787 [3d Dept 1978]; People ex rel. Patricia "BB" v Albany County Dept. of Social Servs., supra). Where the child has been placed in an adoptive home, the surrendering parent is not irrevocably foreclosed from applying to the court to restore custody; however, custody in such case "shall be awarded solely on the basis of the best interests of the child * * * [with] no presumption that such interests will be promoted by any particular custodial disposition”, thereby pitting the petitioning natural parent against the prospective adoptive parents (Social Services Law § 383 [6]; § 384 [5]; State of New York ex rel. Dunn v Catholic Home Bur. for Dependent Children, supra).
In this case, where the respondent natural mother clearly communicated to the agency caseworker who witnessed the surrender instrument her desire to regain custody of her children on August 19, 1986 and August 21, 1986, at a time when the surrender instruments had not been acknowledged or recorded as required by statute, no surrender instruments had yet been obtained from the natural father whose consent to adoption was required, and the children had not yet been placed in the home of adoptive parents, the respondent natural mother is entitled at the very least to the presumption stated in rule 2 that the best interests of the children would be promoted by returning them to the custody of their natural mother.
"A change of mind by the natural mother is not in and of itself an evil thing. Instead, it is to be accorded great sympathy and, in a proper case, encouragement and favorable action” (People ex rel. Patricia "BB” v Albany County Dept. of Social Servs., supra, at 975; People ex rel. Anonymous v New York Foundling Hosp., 17 AD2d 122 [1st Dept 1962], affd 12 NY2d 863 [1962]).
Neither the actions of John C. in signing surrender instruments on August 26, 1986 nor the agency’s placement of the children in an adoptive home on August 28, 1986 can properly serve to deprive the respondent of the benefits of rule 2.
However, since the surrender instruments had not even been acknowledged by the witness nor recorded in the office of the County Clerk when the respondent requested the return of her children on August 21, 1986, the surrender instruments *740 themselves were not then complete or valid, and this court is required to vitiate the surrender instruments and set them aside. (State of New York ex rel. Dunn v Catholic Home Bur. for Dependent Children, supra). Only if the court could properly overlook the failure of the agency to comply with the statutory requirements for a valid surrender instrument would the limited issue of the evaluation of the fitness of the respondent natural mother pursuant to rule 2 even arise.
Accordingly, this court holds and determines that the applications to approve the surrender instruments should be denied, and that respondent natural mother upon her cross petitions to revoke the surrender instruments and to regain custody of her two children should be awarded custody of her children. The order will provide that the agency shall forthwith return custody of both children to the respondent natural mother.
I do not like the result in this case. The adoptive parents have now had the children for seven months, during which time strong bonds of love have undoubtedly developed. The respondent mother certainly has some shortcomings as a parent, and the immaturity of both natural parents and seemingly inevitable custody and visitation hassles loom as a cloud over the children’s futures. The emotionally shattering implications now inherent in this matter clearly could have been avoided. However, the function of this court is to apply and enforce applicable law, and no other result is possible under such law when applied to the facts of this case.