OPINION OF THE COURT
Damian J. Amodeo, J.
In this proceeding, petitioner (father) seeks sole custody of the parties’ children, Ashley (date of birth May 30, 1989) and Kristin (date of birth Feb. 8, 1992), who currently reside in the State of Florida with respondent (mother). The mother has sole custody pursuant to a prior order of this court. The father contends that the mother’s move to Florida has effectively deprived him of contact with his children and, for that and other reasons, argues that a shift in sole custody is warranted. The mother has moved to dismiss the petition on the grounds that: (1) the allegations are insufficient on their face to warrant an award of custody; (2) pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), the court lacks jurisdiction of this proceeding; and (3) this court is not the appropriate forum under the UCCJA to determine petitioner’s application for a change of custody.
ISSUES
The issues before the court are whether the father’s petition contains sufficient facts to warrant a hearing and, if so, whether that hearing should be conducted in New York. Based on the unique circumstances present in this case the court determines that the mother’s motion to dismiss should be granted.
BACKGROUND
The father’s application and the mother’s motion must be viewed in the context of the parties’ extensive history in this court which culminated in an award of sole custody to the *796 mother in June 1993. In deciding this motion, the court takes judicial notice of its records (Richardson, Evidence §§ 14, 30 [Prince 10th ed]; see, Graffeo v Brenes, 85 AD2d 656).
The parties, who were married in January 1989, are now divorced. In November 1992 the mother filed a family offense petition, alleging violent, threatening and erratic behavior by the father. In January 1993 she filed a custody petition. The proceedings were consolidated and the court issued various temporary orders of protection on behalf of the mother. During January, February and March 1993 the mother filed numerous petitions alleging that the father violated the orders of protection. The father filed a cross petition for sole custody.
On January 26, 1993 the court directed the parties to undergo drug testing, based on cross allegations of substance abuse. Shortly thereafter the court received the results of the mother’s drug and alcohol screening, which were negative. The court was also informed that the father had failed to appear for his testing. In March 1993, when the father appeared with counsel, the court directed that he provide drug test results by the next court date. The court also modified the order of protection to direct that the father stay at least 1,000 feet away from the mother and that he have no contact with the children. Subsequently, the father was granted supervised visitation with the children through the KIDS Program, a formal supervised visitation program available in Dutchess County and administered by the Astor Child Guidance Clinic.
On May 7, 1993 the court also received notice from Family Services of the Mid-Hudson and Harlem Valleys, which indicated that the father had not attended the Alternatives to Family Violence Program as directed by the court on January 26, 1993.
On June 15, 1993 the parties appeared in court with counsel and entered into a stipulation. Pursuant to that settlement, which was reduced to a written order dated July 26, 1993, the mother withdrew her family offense petitions; the father withdrew his custody petition; the mother was granted sole custody of the children; the father’s visitation was to be continued through the KIDS Program; the father was directed to attend therapy sessions at the Department of Mental Health, which was to submit periodic progress reports to the court; the father was to stay 1,000 feet away from the mother, her residence and her place of employment; and the father *797 was to remain 250 feet away from the children, except for the supervised visitation. The court also directed that the father was not to harass, annoy, recklessly endanger, engage in disorderly conduct toward, threaten or assault the mother.
In November 1994, the mother filed a violation petition alleging, inter alia, that the father continued to harass her by calling her place of employment and by various other acts; that he came to her residence and was verbally abusive and threatening; that he attempted to take the children away from her and remove them to California; that he sent her a threatening letter; that he stalked her; and that he was not exercising his visitation through the KIDS Program.
The father failed to appear on January 14, 1994, the return date of the mother’s violation petition. After finding that the father had been properly served and was in default, the court conducted an inquest. Based on the mother’s testimony, the court issued a written order dated February 16, 1994 which, inter alia, provided that the mother have sole custody of the children; that the father’s visitation be suspended until he made an affirmative application and the court determined whether resumption of visitation would be in the best interests of the children; that the father stay at least 1,000 feet away from the mother and the children; and that, if he were found within the 1,000-foot radius, he was to be taken into custody and brought before this court.
In March 1994, following entry of this latter order, the mother relocated to Florida with the children. She asserts that the move was justified on several grounds: economic necessity, in that she was not receiving child support from the father and was able to obtain full-time employment in Florida; her job in New York was in jeopardy due to the father’s harassing behavior; Florida provided her and her children with a safe haven from the father’s behavior; and her grandparents reside there and are able to provide her with day care.
Prior to his filing the instant application for sole custody the father never made any application for restoration of his visitation which had been totally suspended since the February 16, 1994 order, which remains in full force and effect.
THE FATHER’S PETITION
In July 1994 the father filed the pending application for sole custody alleging, inter alia, that he wants the children to *798 grow up with "the standard that he is able to give them”; that the mother is a habitual liar and has a history of drug use; that she lied to get an order of protection; that he can provide a stable home to the children; and that the mother’s relocation to Florida has denied the father the opportunity to spend time with his children.
APPLICABLE LAW AND DISCUSSION
The court recognizes that in most instances it would be inappropriate to make a determination involving issues of custody or visitation without conducting a comprehensive evidentiary hearing to determine what is in the best interests of the children (see, e.g., Robert C. R. v Victoria R., 143 AD2d 262; Mosesku v Mosesku, 108 AD2d 795; Rickman v Rickman, 104 AD2d 934). However, a court is not required to conduct a hearing whenever a party moves for a change in custody no matter how speculative or frivolous the reasons advanced in favor of the application may be. The person seeking a change in custody must make some evidentiary showing to warrant a hearing (David W. v Julia W., 158 AD2d 1). Here, the father’s application for a change in custody is completely unsupported by any evidentiary showing which would warrant a hearing. As the court noted in David W. (supra), to automatically grant a hearing to a noncustodial parent would "simply facilitate a disgruntled party in harassing his or her * * * spouse, compelling the latter to expend considerable time, money and emotional anguish in resisting the loss of custody.” (Supra, at 6-7.) These words apply most aptly to this case.
The father alleges that he wants the children to grow up with the standards he is able to give them. Yet, he has consistently failed to comply with this court’s orders; he failed to pursue visitation with the children when it was directed through the KIDS Program; he failed to attend the Alternatives to Family Violence Program; he failed to promptly comply with this court’s directive that he submit to a drug screening; and, following suspension of his visitation, he failed to come forward and make an affirmative application for visitation. In addition, the father has repeatedly engaged in conduct which warranted entry of various orders of protection. In this context, and based upon the parties’ history before this court, little, if any, credit is given to the father’s present, completely unsupported allegations that the mother is a liar and drug user.
*799 The father’s allegation that the mother’s move to Florida has deprived him of contact with the children is disingenuous at best. It was the father’s own actions which have deprived him of visitation. Even while the children still resided in New York he took absolutely no steps to remedy the situation. This court gave the father every reasonable opportunity to further his relationship with his children and he failed to do so. From June 1993 until August 1994, when the mother was served with the instant application, the father made no effort to reestablish visitation with the children. He did not write them or send them any gifts. He also failed to follow the recommendations of Barbara Peelor, the psychologist at the KIDS Program, by failing to engage in individual counseling at the Department of Mental Hygiene; by failing to address his substance abuse problems; and by failing to resolve the personal issues which "prevented him from beginning to look at the needs of his daughters”.
None of the father’s submissions state, or even suggest, that he has complied with these prior directives of the court. Viewing the content of the father’s present petition in the best light in the context of foregoing history, the father is in no position to assume sole custody of his children and a hearing on that issue is not warranted.
Furthermore, in this court’s opinion, the mother’s move to Florida does not, under the particular circumstances of this case, trigger the application of the relocation rule which would require her to demonstrate exceptional circumstances necessitating the move. In virtually every case addressing the relocation of the custodial parent a threshold question asked by the court was whether the move disrupted or impaired the noncustodial parent’s close relationship with the child (see, e.g., Matter of Bennett v Bennett, 208 AD2d 1042; Roush v Roush, 204 AD2d 195; Matter of Lake, 192 AD2d 751; Matter of Radford v Propper, 190 AD2d 93, 99; Leslie v Leslie, 180 AD2d 620). In Lake, the Court looked at the disruption to a noncustodial parent’s "customary pattern of frequent contact” (192 AD2d, supra, at 753). In Roush, the noncustodial parent was "an active parent whose involvement in his children’s lives is extensively detailed” and was "significant and beneficial” (204 AD2d, supra, at 197). The Court in Radford noted, in applying the test for relocation, that a noncustodial parent who has demonstrated "a sincere interest in the child and who has exercised his or her right to regular and frequent visitation must be able to continue to enjoy frequent, regular *800 and meaningful contact with his or her children” (190 AD2d, supra, at 99). The Second Department in Leslie referred to the fact that the father had "developed an enriching and meaningful relationship with his son” and the move deprived him of his "regular access” (180 AD2d, supra, at 622; see also, Holsberg v Shankman, 171 AD2d 1067, in which the Court notes that the "noncustodial parent exercises regular and frequent visitation with the children and has established a substantial and loving relationship with them.”)
Is a parent, whose own actions have resulted in a court-ordered suspension of his visitation rights, entitled, to insist that the custodial parent be held to the same standard upon relocation as a parent who has regularly exercised his or her visitation rights? In this court’s opinion, an affirmative answer to the foregoing question would be contrary to the purposes for which that standard was established (see, Matter of Temperini v Berman, 199 AD2d 399, 400).
The court recognizes that wherever possible the best interests of a child lie in being nurtured and guided by both parents (Daghir v Daghir, 82 AD2d 191, 193, affd 56 NY2d 938). However, in the case at bar, the father has refused to take the steps necessary to reestablish a meaningful relationship with his children. In this context, the father has essentially forfeited his right to access to his children. His petition, insofar as it seeks a change of custody based upon the mother’s relocation, fails to state a claim upon which relief can be granted.
Finally, the court notes that even if dismissal were not warranted for the reasons outlined above, this court would, in any event, decline to exercise jurisdiction on the ground of forum non conveniens. While New York had home State jurisdiction at the time the petition was filed (Domestic Relations Law §§ 75-c, 75-d [1] [a] [i]), pursuant to the UCCJA, Florida is now the more appropriate forum. It would be in the best interests of the children to have that State make any further determination as to custody or visitation (Domestic Relations Law § 75-h [3]). Florida is presently the home State of the children and evidence concerning their present and future care, health, education and activities is more readily available in that State (see, Heitler v Hoosin, 143 AD2d 1018; Marlow v Marlow, 122 Misc 2d 221).
Based upon the foregoing, the mother’s motion is granted and the father’s custody petition is dismissed.