J.V. v M.S. (2024 NY Slip Op 51656(U))

[*1]

J.V. v M.S.

2024 NY Slip Op 51656(U)

Decided on November 27, 2024

Supreme Court, New York County

Chesler, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 27, 2024
Supreme Court, New York County

J.V., Plaintiff,

against
M.S., Defendant.

Index No. XXXXX

Counsel for Plaintiff:
Randi L. Karmel, PLLC
780 Third Avenue, Floor 14
New York, NY 10017
By: Randi L. Karmel, Esq. & Danielle J. Feder, Esq.
Counsel for Defendant: 
McLaughlin & Stern, LLP
260 Madison Avenue, Floor 20
New York, NY 10016
By: Neha S. Choudary, Esq. & Samae Rohani, Esq.

Ariel D. Chesler, J.

The parties in this matter resolved all issues for their divorce by way of a So-Ordered Stipulation of Settlement dated June 21, 2023, which incorporated the parties' Final Order of Custody on Consent dated June 21, 2023 (individually and collectively referred to as: the agreement). The agreement provides for a complex joint custody and progressive parenting time schedule. Likewise, the parties set forth a scheme for distributing their marital properties and debts; most relevant herein, is the manner of the sale or buy-out for the marital residence, the handling of various debts, and the mechanism for reimbursement for child support add-ons.
In this motion sequence, the Mother moves by order to show cause for, inter alia, enforcement of the custody and equitable distribution provisions of the agreement, contempt related to the Father's non-compliance therewith, and for legal fees. The Father cross-moves for, inter alia, modification of the custody and parenting time provisions of the parties' Custody Stipulation.
I. The Mother's Requests for Enforcement and Contempt Related to Parenting Time
The parties' parenting time schedule is one of the most complex this Court has seen. This complexity, which seemingly was crafted to avoid future conflict, appears to have caused just that. The actual step-ups of the parenting time are irrelevant for resolving this motion; however, the agreement initially provided for the Father to have more parenting time with the Child. Then, nine (9) months after execution, the parties were to "revert" to a 50-50 schedule.
a. Construction and Enforcement of the Custody Provisions
This Court is routinely called upon to resolve disputes as to the interpretation of marital settlement agreements. Here, the Mother's request for enforcement calls for such interpretation.
The Court is guided in the first instance by the confines of the agreement. The rules are simple,
[a] stipulation of settlement which, like the one at issue here, is incorporated but not merged into a judgment of divorce, is a contract subject to the ordinary principles of contract construction and interpretation. These rules provide that "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms . . . [and] courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." (Keller-Goldman v Goldman, 149 AD3d 422, 424 [1st Dept 2017] citing, Bernstein v Novani, 131 AD3d 401, 405 [1st Dept 2015]).
The agreement provides specifically,
Nine months following the So Ordering of this Stipulation, upon consultation with the Child's then therapist and taking into account the Child's wishes, the parenting schedule shall revert to a 50-50 access schedule between the parties on a 2-2-5-5 rotating schedule with each party having a full weekend with the Child from Friday after school through Monday morning. Should either party have concerns with respect to returning to a 50-50 schedule as opposed to keeping the schedule hereinabove in place, either or both parties may seek judicial intervention. ([Note: internal emphasis supplied])
Both Stipulations were respectively So Ordered on June 21, 2023, by Referee Maeroff and this Court. Nine months after such date is March 21, 2024.
This motion was filed in May 2024. Under the agreement, the Mother was entitled to 50-50 parenting time no later than March 21, 2024 - under any circumstance absent judicial intervention. The parties dispute the import of the language that says, "upon consultation with the Child's then therapist and taking into account the Child's wishes." In this Court's view, this introductory language does not function as a condition precedent to the operation of the 50-50 schedule. The language immediately following this clause states that the 50-50 schedule "shall" be enacted. The use of "shall" makes clear that no matter the Child's wishes or the therapist's input, the operation of the agreement would always result in 50-50 access unless judicial intervention was sought.
If there is any doubt, the language permitting a parent to seek judicial intervention if there arise "concerns" with the 50-50 access demonstrates the parties — at signing— knew that the equal access schedule "shall" be the result after nine (9) months. The judicial intervention [*2]language demonstrates a conscious knowledge and intent at signing that the access schedule could only be impeded by court order and thus further demonstrates the clarity of the parties' intent that this 50-50 access schedule was inevitable after nine (9) months absent the Court's word otherwise. Further, the use of the specific language "revert" to the 50/50 schedule and "return" when seeking judicial intervention to stop such reversion makes clear that the parties intended to "revert" to the 50/50 schedule after nine months unless a court said otherwise.
Outside of the four corners of the agreement, the law cannot give effect to the Father's interpretation of the agreement. A provision that would place the authority to determine the rights of visitation in any third party or a child would be legally infirm because resolving those disputes is solely the province of the courts. It thus follows that third parties cannot determine if an expansion of a parent's visitation rights is appropriate. (See Silbowitz v Silbowitz, 88 AD3d 687, 688 [2d Dept 2011][Holding a court may not delegate to third-party parenting coordinator the authority to resolve issues affecting the best interests of the children]; Johnson v Johnson, 303 AD2d 641, 642 [2d Dept 2003]["Thus, the Supreme Court improperly delegated its authority to both the plaintiff and the forensic evaluator to determine the best interests of the child."]; Gadomski v Gadomski, 256 AD2d 675, 677 [3d Dept 1998]["[N]or can a court delegate (as was done here) to a mental health professional its authority to resolve these issues in the best interests of the children."]). Thus, as the law and plain language of the agreement make clear, the contemplated third parties (i.e., the therapist and the child) advise on the outcome but do not determine the outcome. Indeed, the language of the agreement confirms this understanding by insulating the 50-50 schedule's operation unless judicial intervention is sought.
Illustrative to this case is Millet v Millet in which the Appellate Division reversed the Family Court for conditioning a parent's parenting time expansion upon the direction of a therapist. (270 AD2d 520 [3d Dept 2000.]; see also, Sullivan County Dep't of Social Servs. V Richard "C", 260 AD2d 680 [3d Dept 1999] lv denied, 93 NY2d 958 [1999]). Relatedly and independently, it is well-settled that a Child cannot dictate visitation. (See William-Torand v Torand, 73 AD3d 605, 606 [1st Dept 2010]; Guy v Guy, 147 AD3d 1305, 1306 [4d Dept 2017]["In denying the father's motion in its entirety, the court improperly allowed the children essentially to dictate whether visits would ever occur with the father."]; Casolari v Zambuto, 1 AD3d 1031, 1031 [4d Dept 2003]; Sturm v Lyding, 96 AD2d 731, 731-32 [4d Dept 1983]). Thus, the Court, as a matter of law, cannot give effect to the Father's interpretation as it would amount to this Court violating the clear prohibition on placing visitation determinations in third parties. (See Lorillard v Clyde, 86 NY 384, 387 [1881]). The plain and lawful construction of the agreement demonstrates the 50/50 schedule should be in place. (Id).
In light of the foregoing, this Court can only rationally interpret the clause related to the Child's wishes and therapist's input as prefatory and prophylactic  not a conditions precedent. As acknowledged in the agreement, judicial intervention was the means to stop the 50/50 transition. On the other hand, the therapist and child's input reflected a shared intent by the parties to seek consultation from those sources.
Even assuming, en arguendo, that the therapeutic intervention was a condition precedent, the circumstances demonstrate that, even despite the Father's concerning and clearly inappropriate impeding of the Child retaining a new therapist, the Mother did what she could by reaching out to the school for their input. Indeed, while the Father attacks the Mother for this correspondence, it is clear from the contents that the Mother was merely seeking to effectuate the transition in parenting time in the only manner that seemed logical under the circumstances, [*3]given the child no longer had an individual therapist, and was being treated exclusively by his school. Thus, to any extent the parties did interpret the agreement as improperly requiring third-party input before they transitioned to the 50/50 schedule, the Court finds the Wife sufficiently discharged her duty in reaching out to the school; thus, under either measure, the schedule must transition to 50/50.
Accordingly, the Mother's request for enforcement of the agreement's 50/50 access provisions is GRANTED to the extent that the parties shall forthwith enjoy the 50/50 parenting time schedule set forth in their Stipulation.
b. Contempt Related to the Custody Provisions
Concerning the Mother's request for contempt on this issue, the Court reaches a different result. While non-compliance is evident, contempt is not synonymous with non-compliance. It is black letter law that to sustain a finding of civil contempt or to advance to a hearing on such issue, there must be prima facie showing of,
First, [. . .] a lawful order of the court, clearly expressing an unequivocal mandate, was in effect.' Second, "[i]t must appear, with reasonable certainty, that the order has been disobeyed." Third, 'the party to be held in contempt must have had knowledge of the court's order [. . .]. Fourth, "prejudice to the right of a party to the litigation must be demonstrated." (El-Dehdan v El-Dehdan, 26 NY3d 19, 29 [2015]; see Judiciary Law § 753).
Here, it is beyond dispute that there was a lawful order in effect, that the Father had knowledge of it, that its provision was disobeyed by the Father, and that the Mother was prejudiced by such conduct. The harder issue here is whether the directive for the 50-50 schedule was clear and unequivocal. This Court cannot find the directive was clear and unequivocal under the circumstances.
The language discussed above was unequivocal in the sense that it directed a certain result; however, it was not clear on how. The benefit of drafting an agreement with such terms is that it can aid in gleaning the parties' intent. Notwithstanding, those benefits come with consequences. One such consequence is that in inserting so much language on an issue, the resolution reached in the agreement may not be clear. Indeed, it appears that the instant language was not clear to either party.
Contempt is a harsh remedy meant to vindicate the rights of the injured party. Enforcement, by contrast, is a less drastic remedy. The Court finds that the Mother failed to make a prima facie showing that the Father violated a clear and unequivocal mandate because the provision was convoluted and hard to decipher. (See e.g., Dalton v Dalton, 164 AD3d 1300, 1302 [2d Dept 2018]["Here, the plaintiff failed to establish by clear and convincing evidence that the defendant violated a clear and unequivocal order of the court."]). Accordingly, the Mother's request for contempt as it relates to custody is DENIED.
II. The Father's Modification of Custody Request
"A noncustodial parent seeking a change of custody is not automatically entitled to a hearing but must make some evidentiary showing sufficient to warrant a hearing." (Tsung v Tso, 190 AD3d 575, 576 [1st Dept 2021]; see e.g., David W. v Julia W., 158 AD2d 1 [1st Dept 1990]; D.G. v M.G., 83 Misc 3d 1218[A][Sup Ct, NY Cnty 2024, Chesler, J.]).
This Court cannot say there has not been a substantial change in circumstance to at least [*4]warrant a hearing. (Tsung, supra at 576). This Court is cautious to subject a family to further custody litigation but, from the papers and ample argument in the record, the inescapable truth is that the Father has met his threshold showing to advance to a hearing.
The specific changes that support the advancement of this matter to at least a hearing are the parents' inability to co-parent and the harmful friction between the parents in making key educational and psychotherapeutic decisions for the Child. The animosity between the parents and the animosity between the child and the Mother are cause for concern and may require a modification of custody to ensure the best interests of the Child are met. (See Matter of Luke v Erskine, 222 AD3d 868, 870 [2d Dept 2023]["'The required change in circumstances may be found to exist,' among other circumstances, 'where the parties' relationship has deteriorated to a point where there is no meaningful communication or cooperation for the sake of the children.'"][internal citations omitted]). Contrastingly, the basis for the Child's hostility and the Father's demonstrated efforts to frustrate the 50/50 schedule call into question his ability to facilitate a relationship between the Child and the Mother; this may also warrant modification. (See Matter of Pierce v Caputo, 214 AD3d 877, 879 [2d Dept 2023]["Significantly, the Family Court concluded that the father will foster a better relationship between the mother and child than the mother would have fostered between the child and the father."]). In sum, there is a concern here that mandates a hearing.
The Court must, for the Child, further inquire as to what has occurred since this agreement went into effect to determine if this custodial arrangement is sufficient to warrant an inquiry into whether the arrangement is in his best interests.
The Court further notes that in the proceedings thus far, there has been evidence of animosity between the parents, their inability to agree on simple facts, and sharply differing approaches to major decisions related to the Child's education and psychotherapeutic care. For instance, the Mother made some questionable educational decisions in commencing an improper DOE proceeding and not informing the Father. The Court does not resolve the Father's factual assertion that the Mother purposefully misspelled the Father's e-mail so he would not be informed. Rather, it is clear that the Mother failed to inform the Father of the proceeding after it commenced.
Under the circumstances, the Mother was very well aware of the Father's historical involvement in the DOE litigation necessary for this Child's education and her decision to unilaterally pursue litigation and not apprise or inquire of the Father in the first instance or after he was clearly not responsive to the proceedings demonstrates she did not inform him or meaningfully consult with him on this issue. Likewise, the Father's stalwart position that the school social worker was a sufficient individual therapist for the Child is equally concerning as it relates to medical decision-making. This is especially so when reference is given to the unique concerns this Child faces in regulating his emotions. Both parents have engaged in questionable conduct that collectively demonstrates there is sufficient proof before this Court to advance to a hearing on the substantial change in circumstances issue. Only after such a finding can the Father then proceed to a full custody trial in the Child's best interests.
Accordingly, this Court finds the Father and Mother's papers have made a sufficient threshold showing to advance to a hearing on the preliminary issue on if there is a substantial change in circumstances that would then justify a hearing on what is in the Child's best interests and as such that branch of the Father's Cross-Motion is DENIED WITHOUT PREJUDICE and the Father shall forthwith file for a modification in family court with a certified copy of this [*5]Decision & Order to have the matte properly docketed in the Family Court. 
To be clear, this Court is finding that, on the papers and oral arguments, there is a sufficient threshold evidentiary showing to advance to a hearing on the specific issue of if there is a change in circumstances. This Court is not ruling to any extent on even if a modification is appropriate under the circumstances as alleged. Indeed, the hearing may demonstrate that the circumstances, as they are, would not necessitate any modification.
III. This Modification Portion of this Action is Transferred to the Family Court for Adjudication and Dispositio
The underlying custody dispute in this matter was heard in the Family Court before Referee Maeroff. The Father's counsel raised this issue and requested the issues of custody be heard in Family Court. The Mother's counsel objected, arguing that the matter was properly before this Court due to the equitable distribution and otherwise property-based relief sought in the Mother's Order to Show Cause. The Father's counsel raises this concern again in her papers and this Court now agrees.
The Family Court knows this family far better than this Court. More compelling is this State's clear policy that there be one jurist per family. (22 NYCRR § 202.53[c][6]). Here, the Supreme Court is not proper under this Rule as argued by the Father because the Family Court has institutional knowledge of this family. This compels this Court to refer this matter to the Family Court. (NY Const Art VI, § 19; FCA § 651[a]; Kagen v Kagen, 21 NY2d 532, 538[1968]; People ex rel. Moffett v Cooper, 63 Misc 2d 1005, 1007 [Fam Ct, Dutchess Cnty 1970]["[S]ection 651 of the Family Court Act [. . .] can only be interpreted as a legislative recognition of the [. . .] referral and transfer of custody proceedings."][internal citations omitted]). Accordingly, the Court hereby TRANSFERS WITH MOTION the branches of this application as they relate to the modification of custody and appointment of an Attorney for the Child to the Family Court of the County of New York, specifically, Referee Maeroff who originally heard the underlying custody proceeding.
In order to effectuate this, transfer the County Clerk of New York County requires this Court to deny the Father's request without prejudice with the directive that he thereafter file in Family Court and include a certified copy of this Order; accordingly, this Court directs such action.
IV. The Mother's Application for Enforcement and Contempt Regarding Equitable Distribution
This Court previously determined the Father was non-compliant with the provisions related to equitable distribution in the parties' agreement and issued an order to such effect.[FN1]
Thus, the Mother's enforcement request as it relates to equitable distribution has already been deemed successful and resulted in the order sought, thus mooting that branch of the motion.
Unlike the unclear language regarding parenting time, the agreement here was unequivocal on the issue of the sale of marital residence. The four elements of civil contempt here are shown and beyond dispute. The Father was aware of the equitable distribution provisions. He then failed to comply with this unequivocal mandate. Finally, such failure caused injury to the Mother in prejudicing her rights under the agreement and delaying the sale of the [*6]marital residence thereby delaying the Mother's rightful share of equitable distribution and financially affecting such distribution due to delay in proceeding with the sale/buy-out and appraisal called for in the agreement. It also negatively impacted the Mother's credit.
Accordingly, the Mother's request for a finding of contempt against the Father is GRANTED to the extent that the Father is found guilty of civil contempt.
Furthermore, the Court finds the award of counsel fees, infra, and the vindication of the Mother's rights under the agreement through the Court's interim order, supra, satisfy the punishment for the Father's contempt. (See Jud. Law § 753; In re Hildreth, 28 AD2d 290, 292 [1st Dept 1967]["The power is expressly conferred upon a court of record to punish a person for a civil contempt of court [. . .] It is well settled, however, that the power so conferred upon the court is discretionary and is to be exercised in the light of the facts and circumstances in each particular case."]).
V. Other Financial Relief
The Mother seeks various forms of financial relief and reimbursement as it relates to, inter alia, debts, mortgage arrears, and child support add-on arrears. The Father seeks to use the proceeds of the sale of the marital residence to resolve any debts but generally contests most of the debts.
a. Child Support Add-on Request
As it relates to the add-on expense of the dental and orthodontic expenses, the Mother's request is DENIED without prejudice for failure to offer sufficient proof. Specifically, the Mother failed to offer any proof that she advanced payment that would entitle her to reimbursement from the Father.
b. Requests Related to Marital Property and Debts
The Mother seeks a court directive that the Father: (1) cooperate with the sale and advance $875.00 as his 50% share for an appraisal; (2) he immediately pay his 50% share of the unpaid coop fees/maintenance arrears; (3) he pay 100% of the missed mortgage payment of $1,524.11 for and that he pay 100% of the mortgage until the sale of the marital residence; and (4) he pay his 50% share of the COVID marital loan taken out by the parties. 
The Court does not have sufficient information to determine whether an appraisal has already occurred; however, it is the court's belief based upon the record that same has occurred. However, if not, the Mother's request that the Father pay 50% of the appraiser cost is GRANTED.
The parties' agreement provides that they "equally split the cost of housing, including all carrying costs on the [marital residence]" which includes the "mortgage, maintenance, storage and garages expenses" as well as hotel expenses for nesting of "up to $200.00 per night." However, these amounts were contained to "9 months following the execution of the agreement." The provisions are silent as to what happens after nine months. For guidance, the Court looks to the agreement's Outstanding Debts provision in Article IV.
Therein, the parties demonstrate an equal split for outstanding debts following the entry of the parties' divorce. While these carrying costs are not explicitly listed, their 50/50 share during the 9-month period and the general 50/50 approach the agreement takes to outstanding debts demonstrates that the Wife's request for the Husband to pay 50% of the outstanding mortgage and coop/maintenance fees is reasonable in light of the agreement. Notwithstanding, the Mother, again, offers no proof of her payments. Importantly, the Mother is residing out of the marital residence. In light of this, the Mother's two requests are thus GRANTED IN-PART to [*7]the extent that the parties are directed to comply with the Stipulation and equally pay the mortgage, carrying costs, and hotel costs for nesting until the marital residence is sold. This resolves the Mother's request that the Husband be directed to pay 100% of the mortgage moving forward; she must share in the cost, just as the Father must share equally in her housing costs as they agreed to. Similarly, the parties are directed to "true up" any arrears and ensure they pay their 50% shares of any outstanding housing costs within thirty (30) days of this decision, or by the due date of the bill if sooner.
The parties' agreement, in Article IV, specifically provides for the COVID relief loan the Wife requests this court direct the Father to pay his 50% share and arrearage. Again, the Mother does not provide proof of her payment. Thus, again, the Mother's request is GRANTED IN-PART to the extent that both parties are directed to pay their 50% shares of the outstanding COVID loan. Further, if they are deficient in their 50% shares, they must forthwith become current on such outstanding balances no later than thirty (30) days from this decision or the next due date, whichever is sooner.
Notwithstanding any resolution herein, the parties are free to stipulate and agree that any sums herein (including counsel fees) may be paid directly from the proceeds of the sale of the marital residence.
VI. The Mother's Request for Counsel Fees
The parties' agreement has a default provision which provides,
PENALTIES FOR DEFAULT: In any event that either party defaults with respect to any obligation set forth in this agreement, the injured party shall send written notice, by certified mail, return receipt requested, to the defaulting party, which notice shall specify the nature of the default and, if relevant, any amount due which remains unpaid. If the payment is not made, or the default otherwise cured, within 10 days of receipt of said notice, and the injured party incurs attorney's and related expenses or costs in commencing and maintaining an action or proceeding to enforce this agreement, the defaulting party shall pay all such fees and costs should the non-defaulting party prevail. Should the default be remedied after the retention of an attorney, or after the commencement of the action referred to above, the indemnity and reimbursement obligation shall be operative with the same force and effect as if judgment, decree or order had been made in favor of the party bringing such actions.
In cases, such as this, "[w]here the parties have agreed to provisions in a settlement agreement that govern the award of attorney's fees, the agreement's provisions, rather than statutory provisions, control." (Roth v Roth, 116 AD3d 833, 834 [2d Dept 2014]). Accordingly, where the party has complied with the default provision and prevailed under same, the Court has no discretion to deny an award of fees as prescribed by the contract. (Szekely v Szekely, 73 AD3d 1158, 1159 [2d Dep't 2010]["Contrary to the determination of the Supreme Court, the defendant is entitled to be reimbursed for 'necessary and reasonable' attorney's fees in connection with this proceeding pursuant to the default provision in the parties' settlement agreements."]). Here, the Wife provided proper notice as demonstrated in her moving papers and prevailed in enforcing both the custody and equitable distribution provisions of this agreement. Further, given that the Husband has been adjudged in contempt, fees must be awarded pursuant to both the parties' agreement and the Judiciary Law.
The Wife presents a retainer agreement evincing an initial retainer amount of $10,000.00. The Wife presents redacted invoices demonstrating a total incursion of $45,383.50 with bills dated between April and August of 2024 covering services from February 2024 to August 2024. The Court notes that the only unredacted invoices presented to this Court are dated May 01, 2024; June 24, 2024; and August 08, 2024 (these are related to services rendered between April and June of 2024). The unredacted sums amount to $34,321.00. More importantly, from those three redacted bills, it appears much, if not all, of the legal services related to this motion were incurred.
Notwithstanding the requirements of contract law, the Court finds the modest sum of fees incurred by the Mother compared to the prevailing rates for counsel in this area combined with the skill of counsel surely makes these fees reasonable. Indeed, the Mother's counsel made clear efforts to reduce her client's fees by, inter alia, providing courtesy discounts for her firm's legal services. Thus, under the circumstances, this Court finds such an award of fees is not only required but that the sum sought is wholly reasonable.
The Mother's moving papers request a sum of $25,000.00. In her reply affirmation, she reiterates that requested amount. While the total amount of fees has grown, the Court finds the sum of $25,000.00 appropriate. This is because this is the amount requested specifically by the Wife and because the Wife did not produce sufficient evidence to prevail on some branches of this motion sequence; thus, holding the Father 100% responsible for all of her fees would be inequitable. This is especially so as the Father ushered sufficient evidence to warrant a change in circumstances hearing. Accordingly, the branch of the Wife's motion seeking an award of counsel fees is GRANTED to the extent of awarding he $25,000.00.
Decision date: November 27, 2024

Footnotes

Footnote 1:It is the Court's understanding from oral argument that the subject home has been placed on the market pursuant to this Court's June 27, 2024, interim order and that a sale is expected.